# CHARLESTON.

WILSON *et al.* v. CARRICO *et al.*

Submitted September 9, 1901.    Decided November 30, 1901.

1. CREDITOR'S BILL—*Liens—Priorities—Commissioners Report.*

When a bill in a creditor's suit is referred to a commissioner to ascertain the liens and their priorities against the debtor's property any creditor having a claim against the debtor has the

right to present such claim, and if allowed by the commissioner, has the right to have the same passed on by the court without formal pleadings, and if the court rejects the same such creditor may appeal to this Court.  (p. 339).

2.  PRINCIPAL'S PROPERTY—*Surety's Rights.*

A surety in a suit pending for the purpose is entitled to have the principal's property applied on the indebtedness for his relief.  (p. 340).

3.  INSOLVENT DEBTOR—*Purchaser For Value.*

If an insolvent debtor convey property to a purchaser for value in a position to know that such debtor is making such conveyance to delay, hinder and defraud his creditors, such conveyance will be avoided at the instance of such creditors.  (n 340).

4.  PREFERRED CREDITORS—*Debts Paid—Costs.*

The attacking and preferred creditors are entitled to have their indebtedness paid in full out of property transferred in unlawful preference under section 2, chapter 74, Code, as against creditor who fail to unite in and agree to contribute to the costs and expenses of the suit instituted to avoid such preference.  (p. 340).

5.  PREFERRED CREDITORS—*Pro Rata Distribution.*

The preferred creditors who attempt to sustain the preference given them, are entitled, to the full extent of their indebtedness, to share *pro rata*, in the distribution of the property unlawfully transferred, with the attacking creditors.  (p. 341).

Appeal from Circuit Court, Tucker County.

Bill by O. S. Wilson and others against J. S. Carrico and others.  Decree for plaintiffs, and certain defendants appeal.

*Modified.*

CUNNINGHAM & STALLINGS, for appellants.

C. O. STRIEBY, for appellees.

DENT, JUDGE:

In the case of O. S. Wilson & Bro. v. Carrico and others from Tucker County, being a creditor's suit to ascertain and sell the property of said Carrico to satisfy his debts, three parties appeal as to three separate and distinct matters from a decree entered therein on the 22d day of November, 1900.

C. C. Lambert appeals because the court refused to decree in his favor for the sum of one hundred and seventy nine dollars and fifteen cents, being the one-half of a certain judgment in

favor of the National Bank of Davis, paid by him and reported by the commissioner accordingly; also because the court did decree against him for the other half in favor of the plaintiffs by reason of his being a prior indorser on the note, the basis of such judgment, without first exhausting the property of the principal. Plaintiff insists that because the appellant did not file any pleadings bringing these matters to the attention of the court he is not entitled to be heard as to them now. The commissioner's report brought them to the attention of the court, and on this it must act and it appears from the suspension order entered that Lambert was in court insisting on his rights. This entitles him to an appeal. *Watson* v. *Wigginton,* 28 W. Va. 533. Any creditor though not a party to the suit has the right to appear before the commissioner to whom a cause is referred and present his lien and if the same is allowed is entitled to have the same decreed without formal pleadings. Section 7, chapter 139, Code. If the court was not satisfied with the claim, it should have recommitted it to the commissioner for further investigation, but the commissioner having reported it as a valid claim, the court could not on its own motion without exception disregard it. The commissioner's report made a *prima facie* case in favor of the appellant, and he was entitled to be subrogated to the one-half of the bank debt paid by him. As to the other half of such debt, he, being only surety therefor has the right to have the principal's property exhausted and applied to his relief before being compelled to pay the same. *Neal* v. *Buffington,* 42 W. Va. 327.

Paulina Carrico appeals because the court held the deed made to her by J. S. Carrico on the 4th day of September, 1896, fraudulent as to his creditors. J. S. Carrico does not appear to in any manner or answer the bill, but it is taken for confessed as to him. His fraudulent intent in making the transfer is not denied. Her claim is that she is a purchaser for value without notice. The circuit court came to the conclusion that the facts and circumstances were such as to put her on inquiry. *Farley* v. *Bateman,* 40 W. Va. 540. If she had been a man this conclusion was certainly correct. For it is plain that J. S. Carrico was insolvent in disposing of his property as rapidly as possible. Women generally know little about these things and less about the law; yet sex does not excuse them, especially when acting under the advice and coverture of a husband. She complains that no day was given her in which to redeem. The property was not

being sold as her property, but as that of her father-in-law. He was given a day and this is a sufficient compliance with the law. The judgment liens against the property prior to her purchase exceed its value, while the only other property decreed for sale will be exhausted in payment of the trust lien thereon, including interest and costs. The decree must stand as to her.

J. ·F. Carrico appeals from the decree because the court held that certain transfers of property, to-wit, one hundred and fifty bushels of oats, value forty-five dollars, and one wagon, sixty-five dollars, 5th March, 1896, one horse, one hundred dollars, 15th April, 1896, one-horse wagon and harness, one hundred and fifty dollars, 17th June, 1896, one-half interest in crops, farming implements, three hundred dollars, August 28, 1896, total six hundred and sixty dollars, made to appellant by J. S. Carrico, was an unlawful preference, and then proceeded to *pro rate* the same among a large number of creditors in total disregard in part at least of appellant's debt and of the fact that the title to the property had already been adjudicated in his favor between the same parties in legal proceedings before a justice of the peace. While the justice could determine the title to the property he has no jurisdiction to set aside an unlawful preference and *pro rate* the funds. Equity alone has jurisdiction to do this. Hence the justice's judgment is not a bar to this proceeding.

While it is stretching this statute a great way to hold that it covers numerous transfers of property made to pay debts by an insolvent debtor at different times within one year from the institution of the suit, it seems to come within the meaning thereof, especially when as in this case all such transfers are made to one creditor in a comparatively short period of time. Certainly the statute cannot apply to all efforts of the insolvent to pay debts within one year prior to the bringing of the suit. If such should be the case the insolvent could not pay either his grocer, butcher or baker, or make any effort to pay any of his creditors unless he *pro rate* among them all or the creditors must run the risk of being called in to *pro rate*. It is not necessary to dip farther into the meaning of this statute at the present time. The portion thereof under consideration is in these words:

"Every such suit shall be deemed to be brought on behalf of the plaintiff and all other creditors of such insolvent debtor, but the creditor instituting such suit or proceeding, *together with all creditors of such insolvent debtor, who shall come into the suit*

*and unite with the plaintiff before final decree and agree to*
*contribute to the costs and expenses of said suit shall be entitled*
*to have their claims first paid in full pro rata* out of the prop-
erty so transferred or charged in preference to any creditor of
such debtor who shall before final decree *decline or fail to so*
*unite and agree to contribute to the costs and expenses of said*
*suit,* but not in preference to such creditor as may attempt to
sustain the preferences given him by such transfer or charge."

Not one of the creditors of J. S. Carrico ever came into the
suit in time and united with the plaintiff *and agreed to contrib-*
*ute to the costs and expenses,* but they all failed to do so, hence
they are not entitled to *pro rate* in this fund until plaintiff and
the secured creditors, J. F. Carrico, are paid in full. At the
hearing J. W. Johnston and B. M. Smith, partners as Johnson &
Smith, filed an answer joining in the prayer of the bill, but they
did not agree to contribute to the costs and expenses of the suit,
although it may be inferred that such was their intention. The
judgment, however, is amply secured as a lien on the real estate
and they could not share in the personal fund until the real
estate is exhausted. If there should be any balance due them
after the application of the proceeds of the real estate and they
insist on their right to a *pro rata* share of the fund they can only
be admitted thereto by sharing with the plaintiff in the costs of
this appeal which would amount to much more than any dividend
they could possibly receive. So they will hardly insist on the
sufficiency of their answer. This consuming the whole fund,
there is nothing to be pro rated among the other creditors. This
must be the invariable rule, unless the property transferred ex-
ceeded the secured creditor's debt and the attacking creditors
combined. For the secured creditors being entitled to pro
rate with the attacking creditors, the fund must be entirely con-
sumed, and there would be nothing for the general creditors,
until the secured creditor is paid in full. Such being the law,
the plaintiff and J. F. Carrico are the only creditors entitled to
share in the fund in controversy, and to this the full amount of
their claim. Plaintiff's claims, seventy-nine dollars and two
cents, one hundred and seventy-nine dollars and fifteen cents,
three hundred and seventeen dollars and twenty-nine cents,
amount to five hundred and seventy-five dollars and forty-six
cents. J. F. Carrico's claims, the debt paid, six hundred and

sixty dollars, and the debt still unpaid, four hundred and thirty-three dollars and twenty-nine cents, amount to one thousand and ninety three dollars and twenty-nine cents. The plaintiff's *pro rata* share with reasonable certainty in round numbers is two hundred and twenty-seven dollars, and Carrico's, four hundred and thirty-three dollars. Usually it would be improper to make such *pro rate* dividend until the sale and application of the debtor's property. In this case it is evidence that the prior liens, costs and expenses will exhaust the real estate so that no portion of plaintiff's debts will be realized from the sale. If such a thing should occur it would only decrease plaintiff's *pro rata* share and increase Carrico's in proportion to the amount realized which in the final decree of confirmation can be decreed accordingly.

Hence the decree complained of insofar as it fails to decree to C. C. Lambert the sum of one hundred and seventy-nine dollars and fifteen cents in the same priority with the plaintiff's debt of the same amount upon the tract of thirty-one and three-eighths acres, and insofar as it decrees against said Lambert and Jacob Wolford for the sum of one hundred and seventy nine dollars and fifteen cents before crediting the amount realizable from the property of J. S. Carrico, and insofar as it makes a *pro rata* distribution of the fund of six hundred and sixty dollars among the various creditors and awards them execution therefor, is reversed and annulled and in all other respects it is affirmed.

*Modified.*