SANDFORD *v.* THE WIGGINS FERRY COMPANY.

CONTRACT FOR BUILDING VESSEL.—WHEN TITLE PASSES.—A contracted to build a vessel for B at a stipulated price, a part of which was to be paid in installments as the vessel should reach certain stages of completion, and the residue by a note payable ninety days after the boat should be moved. The installments were paid from time to time as stipulated, and the materials used and work done upon the vessel were paid for by A out of this money. B employed an agent to superintend the building of the vessel, and before the launch put a watchman in charge of her. Afterwards executions were issued against A, and he being unable to finish her, surrendered the vessel to B.

*Held*, that the property in the vessel had passed to B, and was not subject to the liens of the executions.

APPEAL from the *Floyd* Circuit Court.

GREGORY, J.—This was an action by the appellee against the appellant for the possession of the hull of a steam ferry boat. The defendant answered by the general denial, with

an agreement that all matters of defense and reply might be given in evidence thereunder. Trial by the court; finding for the plaintiff; motion for a new trial overruled. The testimony is in the record.

On the 26th of *December*, 1862, the *Wiggins* Ferry Company entered into a written contract with one *William Jones*, by which the latter agreed to build for the former a hull of a ferry boat, of specified description. The hull was to be completed and delivered by the 15th of *May*, 1863. Payments were to be made as follows: $1,500 on the 5th of *January*, 1863; $1,500 when the frame was up; $1,000 when the beams were all on; $1,500 when she was all planked in and decks on; $2,000 when she was launched and delivered; $3,500 in a note at ninety days from the time the boat left *New Albany* for *St. Louis*. Eight thousand and nine hundred dollars were paid on the contract prior to the 23d of *July*, 1863, in advance of the times specified therein, and the residue after that date. The frame work of the hull was put up in the latter part of *April*, or first of *May*. The beams were put on by the first of *June*. The hull was planked up before the first of *July*, and decked in the latter part of that month, and launched *August* 13, 1863. The materials were purchased with, and the labor paid for out of, the money furnished by the appellee. One *Linchie* was employed by the ferry company to superintend the building of the hull. He had employed a watchman to stay on board of her, for six weeks before the launch. On the 14th of *August*, 1863, *Jones* surrendered to the appellee the entire possession of the hull, in an unfinished condition, and the latter employed others to finish her. The appellant was, at the time, sheriff of *Floyd* county, and there came to his hands several executions against *Jones*, one on the 23d of *July*, and a second and third on the 13th and 14th of *August*, 1863. These executions were levied on the 14th of *August* on the hull, as the property of *Jones*.

In whom was the property in the hull at the time the executions came into the hands of the sheriff?

This is the question argued by counsel, and the only one presented by the record. "When a man contracts with another to make any article for him for a given price, the general rule is, in the absence of all circumstances from which a contrary conclusion may be inferred, that no property passes in the chattel until it be completed and ready for delivery. On the other hand, where a bargain is made for the purchase of an existing ascertained chattel, the general rule, in the same absence of opposing circumstances, is that the property passes immediately to the vendee; that is, that there is at once a complete bargain and sale. But these general rules are both, and equally, founded on the presumed intention of the parties. If, in the first, there are attendant circumstances from which the intention may be inferred that the property shall pass in the incomplete and growing chattel as the manufacture of it proceeds, or even in ascertained materials from which it is to be carried to perfection, that intention will be effectuated; and equally in the latter, if it appear that the parties intend to postpone the transfer of the property till the payment of the price, or the performance of any other condition, such intention will be upheld in the courts of law." The conflict in the leading decisions on the point involved, turns rather on the weight given to particular circumstances as evidence of intention, that is to say, in the application of the same principle to the determination of the cases, rather than to any dispute about the principle itself. PARKER, J., in *Andrews et al.* v. *Durant et al.,* 11 New York 35, says: " The question is simply what was the contract of the parties? If it was intended that certain parts of the vessel should pass to the defendants, as the work progressed and was paid for, it was very easy for the parties to have so provided in the contract in express terms. As they did not do this, we must gather the intent from the contract as expressed." In *Glover et al.* v. *Austin,* 6 Pick. 209, it was held that the property in a ship in the process of building could pass from the builder to the person for whom the vessel was being constructed as the

work progressed. There is no difficulty in the question involved, under the *English* decisions. *Woods* v. *Russell,* 5 Barn. & Ald. 942; (7 E. C. L. 512;) *Clarke* v. *Spence,* 4 Adolp. & Ellis 448; (31 E. C. L. 206;) *Wood* v. *Bell,* 5 Ellis & Black. 772; (85 E. C. L. 771.) But it must be admitted that *Andrews et al.* v. *Durant et al., supra,* is in conflict with these cases.

ABBOTT, C. J., in *Woods* v. *Russell, supra,* says: "This ship is built upon a special contract, and it is part of the terms of the contract, that given portions of the price shall be paid according to the progress of the work; part when the keel is laid, part when they are at the light plank. The payment of these installments appears to us to appropriate specifically to the defendant the very ship so in progress, and to vest in the defendant a property in that ship, and that, as between him and the builder, he is entitled to insist upon the completion of that very ship, and that the builder is not entitled to require him to accept any other." It is true that there was another element in that case on which the decision was made to turn. But in *Clarke* v. *Spence, supra,* WILLIAMS, J., in speaking of *Woods* v. *Russell, supra,* and in reference to this point, says: "But there is a passage in the course of that judgment which goes strongly to establish the point contended for by the learned counsel for the plaintiffs; and though the opinion expressed in that passage is extrajudicial, yet considering that time was taken before the judgment was pronounced, and the very great learning of those by whom it was pronounced, we should certainly hesitate very much before we could come to any conclusion contrary to that opinion."

In *Andrews et al.* v. *Durant et al., supra,* DENIO, J., attempts to show that *Clark* v. *Spence, supra,* is in violation of a plain rule of law, and that the decision was reluctantly made. This is hardly a fair view of that case, and is best answered by the opinion of the court as pronounced by WILLIAMS, J., who says: "Several reasons may perhaps be adduced to show that the more obvious intention to be col-

lected from the terms of this contract is, that the builder requiring advances of money in the progress of an expensive work, the purchaser is contented to make such advances, provided he sees the work in such a state of progress as that he may calculate in having an equivalent for his money within a reasonable time; and therefore he stipulates that his advances shall be made at specified stages of the work.

"But, even if this be the more obvious intention, it by no means follows that the view taken of the contract by the court in *Woods* v. *Russell, supra,* is not correct; for the intention there supposed is not in any respect inconsistent with that which is above suggested; both may well exist at the same time. And though, if it were the intention of the contracting parties that the general property should vest in the manner supposed, such intention might have been expressed in less ambiguous terms, yet, if it can fairly be collected from those which have been used, there is nothing either in principle or in practice to prevent the court from carrying it into effect."

*Wood* v. *Bell, supra,* was decided in 1856 in the Queen's Bench, and that decision was afterwards approved, so far as this question was involved, in the Exchequer Chamber. 36 Eng. L. & Eq. R. 148. The only element in that case not in the one at bar, is that *Wood* had his name punched on the ship. In lieu of that, the ferry company put a watchman aboard of the hull to take care of it, which was, in our opinion, a stronger badge of ownership than the punching of the name on a plate of the vessel. In both cases, the last payment was not to be made until a time later than the final completion of the vessel. Lord CAMPBELL, C. J., says: "No inference can be drawn either way from that circumstance."

*Woods* v. *Russell, supra,* was decided in 1822. Mr. *Chitty,* in his work on contracts, recognizes the rule of law to be as stated by ABBOTT, C. J. Chitty on Con., (10 Am. Ed., 1860,) 401. In this State, we have by statute adopted the common law, and it is but fair to suppose, looking to the standard works on that subject, that our ship builders con-

tract with reference to the rule as settled by the *English* courts, and although this question has never been decided by this court, we feel bound by the decisions in *England*, rather than those of *New York*.

The judgment is affirmed, with costs.

*H. Crawford*, for appellant.

*G. V. Howk* and *R. M. Weir*, for appellant.