# CHARLESTON.

## HUFFARD v. AKERS.

Sumbitted January 20, 1902.    Decided November 22, 1902.

1. CONDITIONAL SALE—*Vendor's Lien.*

G. purchased from H., trading as C. H. F. Co., certain articles of merchandise under a contract in substance as follows: "For the sum of two hundred and twenty-one dollars and seventy-five cents to be paid by me, the undersigned Chicago House Furnishing Company have this day sold and delivered to me the following chattels: (here ennumerating the articles and giving prices). I have paid on account of said purchase price the sum of twenty-five dollars cash and I am to pay the balance as follows: Ten dollars each and every month until the full amount is paid. To secure such deferred payments, I have relinquished unto the said Chicago House Furnishing Company all my right, title and ownership in and to said chattels, to have and to hold the same until said indebtedness is paid; and in consideration that I will meet said payments promptly and will safely keep said chattels and use the same with care at Bluefield, West Virginia, and that I will not remove the same therefrom without their knowledge and consent first obtained; the said Chicago House Furnishing Company hereby permit me to hold said chattels for them and enjoy the use

of the same while in my possession on the following condi-
tions:" that in case G. should fail to pay promptly any of said
deferred payments or misuse, or remove or attempt to remove
said chattels or any of them from their location, or in case of
seizure thereof by process of law or in case the vendor should
in his opinion have good reason to fear for the safety of his
interests therein, he had the right under said contract to enter
the premises of G. and take into his possession, without legal
process said chattels and sell the same at private sale or other-
wise in regular course of business, paying to G. or his assigns
the proceeds of such sale after deducting therefrom all sums
due from G. on deferred payments; which contract dated March
24, 1899, was signed by both parties. *Held* to be a conditional
sale of the chattels with title reserved in vendor until pur-
chase money was all paid.   (p. 23).

2.   RENT—*Restraint for Rent.*

Said contract was recorded in the office of the clerk of the
county court of the proper county April 8, 1899, and the goods
so purchased by G. were by him placed on premises leased by
him on the 16th day of March, for a stipulated rent to begin to
run on the first day of April, 1899.   *Held:.* That the goods so
purchased and placed on the leased premises prior to April 8th,
the date of the recordation of the contract, were liable to dis-
traint for the rent.   (p. 27).

Error to Circuit Court, Mercer County.

Action by S. N. Huffard and others against J. T. Akers.
Judgement for defendant, and plaintiffs bring error.

*Affirmed.*

W. WALTER McCLAUGHERTY, for plaintiffs in error.

J. M. ANDERSON, for defendant in error.

McWHORTER, JUDGE:

On the 24th day of March, 1899, S. N. Huffard, trading as
Chicago House Furnishing Company, sold to J. L. Ganaway
certain personal property under the following contract in writ-
ing:

"S. N. Huffard, Southern Manager, Graham, Virginia. No
agreement recognized that is not contained in this contract.
For the sum of $221.75, to be paid by me, the undersigned
Chicago House Furnishing Co., have this day sold and de-

livered to me the following chattels: 1 steel range $55.00, 1 bed $4.50, 1½ dozen napkins $2.25, 4 springs $14.00, 6 mattresses $19.50, 5 pair blankets $12.50, 12 yards table linen $7.00, 5 pairs pillows $7.50, 10 sheets $5.00, 5 white spreads $10.00, 4 wash stands $10.00, 7 center tables $7.00, 2 extension tables $9.00, 6 chambers $3.00, 6 oak chairs $8.50, 6 stool chairs $5.50, 3 stool chairs $4.50, 6 dozen indv. dishes $5.00, 2 dozen white plates $3.00, 1 dozen shades $6.00.

"I have paid on account of said purchase price the sum of $25, cash, and I am to pay the ballance as follows: $10.00 each and every month until the full amount is paid. To secure such deferred payments, I hereby relinquish unto the said Chicago House Furnishing Company, all my right, title and ownership in and to said chattels, to have and to hold the same until said indebtedness is paid and in consideration that I will meet said payments promptly, and will safely keep said chattels, and use the same with care at Bluefield, W. Va., and that I will not remove the same therefrom without their knowledge and consent first obtained, the said Chicago House Furnishing Company, hereby permit me to hold said chattels for them and enjoy the use of same, while in my possession, on the following conditions:

"If I fail to promptly pay any of said deferred payments when they shall become due, or if I misuse said chattels, or remove or attempt to remove same or any part thereof, from said location, or in case of the seizure of the same by process of law, or in any case the said Chicago House Furnishing Company, have, in their opinion, good reason to fear for the safety of their interest in said chattels, the said Chicago House Furnishing Company are to have and are hereby conceded the right, to take said chattels back into their possession, without previous demands and without legal writ, and for that purpose I hereby give them, or their agents, the authority to enter my premises without legal process at any reasonable hour of the day and carry said chattels away.

"It is expressly understood, however, that if for any of the foregoing reasons said chattels are retaken by said Chicago House Furnishing Company, under the terms of this instrument, the said Chicago House Furnishing Company, may repair and store the same at my expense, and may sell the same

within a reasonable time at private sale or otherwise, in the regular course of business, and pay over to me, or my assigns, the proceeds of such sale remaining, after first deducting therefrom all sums owing by me on account of the above mentioned deferred payments, together with all reasonable charges and expenses attending the recovery, repair, storage and sale of said chattels (including court cost and attorneys fees.)

"Witness our hands and seals, this 24th day of March, 1899."

This contract was signed by the parties and acknowledged by Ganaway on the day of its date, and recorded in the clerk's office of the county court of Mercer County, on the 6th day of April, 1899. On the 11th day of May, 1899, C. C. Bailey sued out before a justice a distress warrant against Ganaway, his tenant, claiming rent to the amount of forty-seven dollars and eighty-five cents, and on the 31st day of May he sued out another distress warrant against said Ganaway, for the further sum of twenty-two dollars and fifteen cents, rent: under these warrants J. T. Akers, a constable of Mercer County distrained the goods and chattels sold by the said Chicago House Furnishing Company, to said Ganaway, and took possession thereof. Said Huffard by his agent and attorney demanded of said Akers the possession of said property, which he refused to deliver up. Huffard then as sole member trading as Chicago House Furnishing Company, brought his action in detinue against the said J. T. Akers before E. T. Oliver, justice, for said property, and gave bond under the statute and took possession of the property, the defendant failed to give counterbond. On the trial of the case the justice rendered judgment in favor of the plaintiff. The defendant appealed to the circuit court. The case was there tried before a jury and a verdict rendered for the defendant. Plaintiff moved in arrest of judgment to set aside the verdict of the jury and to grant him a new trial, because the verdict was contrary to the law and the evidence and because of errors in certain rulings of the court, to which exceptions were taken, which exceptions were certified in bill of exceptions and made a part of the record; which motion being argued was overruled and judgment entered upon said verdict. The defendant in open court admitted that he was not entitled to recover possession of the steel range mentioned in the verdict of the value of twenty-seven dollars, as found by the

verdict, and to the four bed springs mentioned in said verdict, of the value of two dollars each, and not entitled to recover the alternate value of said articles, released the same from said verdict and the court proceeded to give judgment for the residue of said property, or the alternate value thereof, as found by the verdict, and defendants costs of defence, to which action of the court in entering judgment for defendant, plaintiff excepted and tendered his bill of exceptions as stated. Plaintiff obtained a writ of error to said judgment. One question involved in the case is whether the contract dated 24th of March, 1899, between Ganaway and Huffard, as the Chicago House Furnishing Company, was an absolute sale and delivery of the property in controversy or whether it was a conditional sale to Ganaway, the said plaintiff reserving therein the title to said goods and chattels until they should be paid for according to the tenor of the contract. And yet that question is not very material in the case, as the question of notice, or the recordation of notice thereof is the controling question. The contract between the plaintiff and Ganaway is a little peculiar, and there can be gathered its true meaning, intent and purpose only by reading the whole contract together. It starts out by saying, "For the sum of two hundred and twenty-one dollars and seventy-five cents to be paid by me, the undersigned, Chicago House Furnishing Company, have this day sold and delivered to me the following chattels (enumerating the articles and the prices). I have paid on account of said purchase price the sum of twenty-five dollars cash and I am to pay the balance as follows: Ten dollars each and every month until the full amount is paid. To secure such deferred payments I hereby relinquish to the said Chicago House Furnishing Company all my right, title and ownership in and to said chattels, to have and to hold the same until said indebtedness is paid." The agreement then goes on to provide that the vendee shall hold and treat the property as belonging to the vendor. *Baldwin* v. *Van Wagner*, 33 W. Va. 293, JUDGE SNYDER in delivering the opinion of the Court, in treating of an instrument which starts out as a lease of a piano, but which is held to be a conditional sale, at page 296, says: "The name given to the transaction, or even the form of the instrument can not change its character. In determining the nature of the contract courts will look to its substance and real

purpose rather than its form or name. But if the substance and purpose do not clearly define the character of the transaction, then the form and the name given to the instrument by the parties may be considered in determining its real character and purpose." It is said in the first part of the agreement, now being considered, that plaintiff had sold and delivered to the vendee the property; yet conditions follow, which clearly show that the sale and delivery were conditional and that the title to the property was intended to remain in the vendor until paid for. The agreement in case at bar is different from that. In *McGinnis* v. *Savage,* 29 W. Va. and also the case mentioned of *Baldwin* v. *Wagner,* 33 W. Va. in that in each of those cases the agreement starts out calling it a lease, while in case at bar it is called a sale. It is insisted by the plaintiff in error that the words "Unless a notice of such reservation be recorded in the clerk's office," as used in section 3, chapter 74, Code, have not the same significance, as the words "From the time it is duly admitted to record" as used in section 4th, and "Until and except from the time that it was duly admitted to record etc.," as used in the fifth section, and says "That the legislature never meant to hold the seller to so strict an account of recording the conditional sale and that the Statute is complied with in spirit at least if the notice or contract of sale is recorded within a reasonable time, and before it could have a fraudulent effect on any one, as it is shown in this case it did not," and claiming that to give the law such construction would put an end to all such dealings. Without such construction how could effect be given to the law requiring the recordation of such notice, no specific rule could be laid down as to what would be a reasonable time in which to record. In *Baldwin* v. *Van Wagner,* 33 W. Va. 293, it is held that "A sale upon a condition precedent and under the provisions of our Statute, section 3, chapter 74, Code, the reservation of title, unless a notice thereof is duly recorded is void, as to the cerditors of the purchaser."

Plaintiff in error contends that the contract of rental between Bailey and Ganaway having been entered into on the 16th of March, prior to the date of the sale of the goods to defendant; that the lessor had given the credit for the rent to the defendant without relying upon the goods and therefore the failure to record the contract of sale could not have injured Bailey. True the

goods sold to defendant never had anything to do with the credit given by Bailey to the defendant. The goods of the tenant are made liable for the rent by statute and whenever they were taken upon the premises by the tenant, without notice to the lessor of the interest of his tenant's vendor therein by constructive notice by recordation, as required by the statute, the very moment they reached the premises in the absence of such recordation they became liable for the rent. It was more than two weeks from the contract of sale to the recordation of the notice thereof. The benefits to the seller are given by the statute, and in order to have the benefit of the statute it must be complied with. It was plaintiff's duty in selling the goods to have ascertained where they were to be placed before delivering them to his vendee, and on finding that they were to be placed in a tenement house he should have recorded notice of conditional sale, and not having done so it became liable under section 12, chapter 93, Code, for the rents stipulated to be paid by his vendee. *Anderson* v. *Henry,* 45 W. Va. 319, (syl. pt. 1.) It is very clear that until the recordation of the notice of the conditional sale the lien of the vendor was not good as against the creditors of the vendee; that being the case they were liable for the rent, the statute making them so. By his contract of rental the landlord became the creditor of his tenant and the statute gave him a lien on the personal property of the tenant, placed upon the leased premises. Plaintiff placed upon the stand as a witness J. B. Yost, the agent of plaintiff who testified as to the property and its value; by him it was sought to be shown what articles of the property taken by him on giving bond when he brought his suit had been sold by him in the regular line of his business and to state what articles of such property were sold, and to give the price thereof for which they were sold, and was asked to state whether the articles so sold brought more than sufficient to pay off the balance still owing by defendant, Ganaway, on the purchase price of said property. These questions were not permitted to be answered, by the court, on objection of the defendant, the objection being sustained, and properly so too, because it was immaterial as to the price obtained by him in selling. The question was the real value of the property so taken by him. He might have sold them at a very great reduction and it would not have enlightened the jury as to the true value. Defendant in error introduced

over the objection and exception of plaintiff the contract of lease between Bailey and Ganaway, the defendant, and two distress warrants sued out by Bailey against the defendant, Ganaway, and which were levied upon the goods in controversy. This contract and the distress warrants were permitted to be read in evidence to the jury to which ruling of the court admitting them plaintiff in error excepted.

The contract between Bailey and Ganaway was proper to be admitted to show the renting and the terms thereof. It is contended that the distress warrants were not properly issued. The first was for $47.85, which was dated the 11th day of May, 1899, being for twelve dollars and eighty-five cents over a month's rent, which was due under the contract on the 30th of April. By said contract it was provided that the paymentts should be made at the end of each month, and further contained the following provisions: "And said party of the second part hereby agrees to vacate said premises immediately upon the violation of any of the provisions of this demise and grant, or upon any default in the payments herein mentioned, and that no further notice to so vacate said premises shall be necessary."

This gave the landlord the right to sue out his warrant for the rent up to its date and for the same reason he had a right to issue on the last day of May a warrant up to and including that day which was for twenty-two dollars and fifteen cents, the residue of the rent for May, because under the provisions aforesaid in the contract it was the duty of the lessee to vacate the premises on default being made in the payment. P. W. Boggess, the witness introduced on behalf of the defendant, on examination-in-chief had placed in his hands the contract of rental between Bailey and Ganaway, and also the said two distress warrants. He was asked if the premises described in the contract and the premises described in each of the distress warrants were the same and he stated they were the same. He was also handed the summons issued in this case and asked to examine the articles sued for therein and to state whether they were ever on the premises described in the contract and warrants and answered they were; and was asked when the articles mentioned in the summons were moved on to the premises, and said shortly after the middle of March; that the greater portion of it was in

March, 1899, and was further asked who had charge of the renting of the premises at the time it was rented to Ganaway, and stated he had. To all of which questions plaintiff objected and the objections were overruled and exceptions taken. The plaintiff moved the court to exclude from the consideration of the jury the evidence of witness, Boggess, which motion was objected to by counsel for defendant and the court overruled the motion, and plaintiff excepted to the ruling of the court. The contract of renting and the warrants being in evidence the evidence of Boggess was proper to locate the premises and the goods, and the court did not err in overruling the objection and the motion to exclude the evidence from the jury. It is insisted by plaintiff in error that the court erred in refusing to set aside the verdict of the jury and grant a new trial for the reason that the verdict is contrary to the evidence in many respects, especially in the value of a number of articles found by the jury and the variance between the verdict of the jury and the value as fixed and established by the evidence of witness, J. B. Yost, which it was claimed was uncontradicted by any evidence in the case, and such articles and the values as found by the jury and as given by said witness, Yost, in his testimony, and in his petition cites fourteen items which shows a discrepancy between the testimony of Yost and the finding of the jury of some 25 per cent. On bringing the suit in detinue for these articles, Yost as the agent for the plaintiff made affidavit before the justice for the purpose of bringing the suit we herein placed the values of such articles in most instances higher than they were placed by the jury; this variance between the affidavit of said Yost as agent of plaintiff in bringing suit and as witness for plaintiff when he is put in the attitude of a defendant may account in some degree for the change of mind of said Yost in regard to the true value of the goods, in the first instance he was suing for his principal for the goods or their alternate value, in his suit he took possession of the goods and now the suit is against his principal for the same or their alternate value. It is only the old question as to "Who's ox is gored."

There is no reversible error in the judgment and the same is affirmed.

*Affirmed.*