# CHARLESTON

Moore *et als.* v. Patchin *et als.*

Submitted February 28, 1911. Decided October 29, 1912.

1. S'ALES—*Construction of Contract—Transfer of Title.*
   Under a contract for the sale of lumber, to be manufactured by the seller from timber then standing and to be delivered f. o. b. cars at Marlinton, at the price of $17.00 per M., on which $600.00 was paid and applied on the stumpage of 150,000 feet, providing for measurement to be made in the log by the purchaser's agent, and for payment of a certain sum per M. as soon as sawed and stacked on the mill yard, and for so-

much more per M. when hauled and loaded on the cars, and authorizing the purchaser to direct the manner of the sawing and the time of hauling to the railroad, and to retain $1.00 per M. until the job is completed to insure the faithful perform- ance of the contract by the seller, title passes on payment of the amount to be paid when the lumber is sawed and stacked. (p. 194).

2.   SAME.
Delivery at the place agreed on is not indispensable to the passing of title.   (p. 194).

Appeal from Circuit Court, Pocahontas County.

Suit in equity by C. L. Moore and others against Edwin Patchin and others.   From a decree for the complainants, de- fendant Horrocks Desk Company appeals.

*Reversed and Remanded.*

*F. R. Hill,* for appellant.

*L. M. McClintic* and *Price, Osenton & Horan,* for appellees.

WILLIAMS, JUDGE:

This appeal brings up a controversy between the Horrocks Desk Company, appellant, claiming to be the purchaser from Edwin Patchin of 126,683 feet of oak lumber sawed and stacked upon the mill yards, and Patchin's creditors who claim that title had not passed to appellant.

Appellant claims under an unrecorded written contract for the purchase of 400,000 feet of oak lumber, more or less, which contains the following provisions, viz.: That said company is to pay Patchin $17.00 per M. log scale, Doyle's rule, to be delivered f. o. b. cars at Marlinton; that it was to be manu- factured by Patchin as directed by said purchaser, i. e., quarter sawed or otherwise, and to be stacked on sticks on the mill yard for sixty days before being hauled and loaded on cars, and to be stacked twenty feet from the mill, or as far from it as possible for the purpose of obtaining insurance.   Payments were to be made as follows, viz.: $600.00 in cash, to be applied on a debt owing by Patchin to Gochenour from whom Patchin had purchased the standing timber; $8.00 per M. when lumber was sawed and stacked on mill yard; $4.00 more per M. when hauled and loaded on cars; and the balance of $1.00 per M. was to be withheld until completion of job.   Patchin bound himself to saw,

on an average, 100,000 feet per month, on a penalty of a forfeiture of fifty cents per M. for all short of that quantity. . The $600.00 cash was paid, and Gochenour thereupon released his vedor's lien upon the first 150,000 feet of oak to be cut from the land; and, for all the lumber on the yard, appellant had paid Patchin a little more than the contract required it to pay before the lumber was put on the cars. The amount cut did not exceed 150,000 feet of oak.

The terms and manner of payment, which applied the $600.00 cash to the stumpage at $4.00 per M., for the first 150,000 feet, and the payment of so much more per M. feet at certain stages of the work, taken in connection with the further facts that no other measurement was to be made after the sawing was done, and that appellant was given the right to direct the manner of sawing and the time of delivery on board the cars, signify a clear intention to pass title to the lumber on the mill yard. Delivery at the place agreed is not indispensable to the passing of title; it may pass even before delivery; and, whether it does so pass or not, is largely a matter of intention between buyer and seller, to be gathered from the entire agreement and its subject matter. As soon as the logs were scaled, nothing more was necessary to ascertain the amount of money to be paid; nor would there seem to be any reason for appellant's keeping a scaler employed to make the measurements and to direct the manner of sawing or any reason for retaining $1.00 per M., until completion of the job, or any reason for Patchin's binding himself to saw 100,000 feet per month, if the parties regarded the sale as incomplete until delivery on board the cars. These provisions are for appellant's benefit, and they are inconsistent with the theory of an executory sale.

In *Williams* v. *Chapman,* 118 N., C. 943, 24 S. E. 810, it appears that one Hyatt sold to Chapman, and agreed to deliver f. o. b. cars, all the telegraph insulator pins that he would manufacture for a period of three years from that date, at $7.50 per thousand pins. All pins were to be boxed or sacked by the manufacturer, as the purchaser might elect, and were to be marked by stencil to be furnished by the purchaser. Chapman agreed to advance, on rough insulator pins delivered at the mill, $3.00 per thousand, and to advance the cost of boxing and pack-

ing. What amount, if any, had been advanced does not appear from the published report of that case, and that question seems to have been regarded by the court as immaterial. In a controversy between the creditors of Hyatt, who was insolvent, and Chapman the purchaser from Hyatt, it was held that the title to the pins passed by the contract of sale, as soon as they were manufactured, and before delivery on board the cars. See *Arkansas Cattle Co.* v. *Mann,* 130 U. S. 69, a case also in point.

But we think the principles announced in *Bank of Huntington* v. *Napier,* 41 W. Va. 481, and in *Buskirk Bros.* v. *Peck,* 57 W. Va. 360, are decisive of this case.

The vendor's liens upon the standing timber, claimed respectively by Moore, and by Gochenour's assignee of one of Patchin's notes to him for the purchase money of the standing timber, do not affect appellant's title to the oak lumber stacked on the mill yard; appellant's title thereto was complete.

In so far as the decree of August 10, 1909, overrules appellant's exceptions to the commissioner's report and holds that title to the 126,683 feet of lumber stacked on the mill yard did not pass to the Horrocks Desk Company, it is erroneous and will be reversed; and this cause will be remanded to the circuit court of Pocahontas county for further proceedings to be had therein, according to this opinion, and further according to the principles of equity.

*Reversed and Remanded.*