# CHARLESTON.

## LYNCH *et al v.* MERRILL *et al.*

Submitted February 21, 1911.   Decided May 20, 1913.

1.   SALES—*Construction—Executory Sale.*

Whether a sale of personal property is complete, or only executory, is to be determined from the intention of the parties as gathered from the contract, the situation of the thing sold, and the circumstances surrounding the sale. (p. 516.)

2.   SAME—*Passing of Title.*

Where the goods sold are sufficiently designated, so that no question can arise as to the thing intended, it is not absolutely necessary to the passing of title that they should be in a deliverable condition, or that the quality or quantity, when the sale depends on either or both, should be determined; they are mere circumstances indicating intent, but are not conclusive.   (p. 516.)

Error to Circuit Court, Wirt County.

Action by J. S. Lynch and others against Will Merrill and others.   Judgment for plaintiffs, and defendant Little Kanawha Log & Tie Company brings error.

*Reversed, and New Trial Granted.*

*George W. Johnson* and *William Beard,* for plaintiff in error.

*L. H. Barnet* and *Brannon & Stathers,* for defendants in error.

LYNCH, JUDGE:

This is a writ of error obtained by the Little Kanawha Log & Tie Company to a judgment for plaintiffs.   The action, originating before a justice, is to determine the right to the pos-

session of thirty-two saw-logs, if to be had, and, if not, to re-cover their value and damages for detention thereof.

The defendant log and tie company claims title to the logs under a contract with Beall dated February 15, 1909, whereby at an agreed price per cubic foot Beall sold the logs to it, to be "rafted" or delivered as rafted at the mouth of Duck run in the Little Kanawha river, the company to furnish, and it did furnish, "chain dogs" and anchor ropes for the purpose. The logs being cut at the date of the contract, Beall proceeded with the work, but the exact date of completion is not shown, though some of the witnesses say the raft was completed in a floatable condition as early as April 20th. If then completed, the logs were rafted at an earlier date.

The plaintiffs trace title to the logs through a sale by an officer under an execution against Beall received at four o'clock P. M. April 19th, and levied about May 10th, the sale being made May 21st.

The summons as issued fixed the value of the logs at $240 and damages at $100, the aggregate of which exceeded the amount for which a justice could render judgment. Before appearance of defendants, Merrill and Petty, by plea or otherwise, except to object thereto, plaintiffs with leave amended the summons by reducing the damages to $50, thereby bringing the total within the jurisdictional amount. Defendants then entered the general issue of *non detinet,* and thereafter, according to the record, moved to dismiss for want of jurisdiction, and, on denial thereof, proceeded to trial, ending in a judgment for plaintiffs.

On appeal to the circuit court, defendants, Merrill and Petty, disclaiming title to the logs and averring title thereto in the log and tie company, the latter, pursuant to an order requiring it to appear, state and defend its title, if any, thereto, appeared to the action, and likewise moved a dismissal thereof. Upon the refusal of the motion, the court, at the instance of the company, continued the case until the next succeeding term, when a trial was had, resulting in a verdict and judgment thereon for plaintiffs.

The defendant company complains of the court's ruling on the motion to dismiss, and cites in support of its contention former decisions of this court. But the cases cited do not, and

could not discuss the question, because it was not therein involved. They hold, as will appear from examination, that, when there is conflict between the amount claimed or proven and that stated in the summons, the latter, and not the former, determines the right to maintain the action. The case of *Hynds* v. *Fay,* 70 Ia. 433, cited, does tend in some degree to support the view urged by the company. But that case does not cite any authority, nor do the facts stated therein correspond in all respects with the facts of this case. In so far as it holds that the parties may not waive the irregularity, if any, it does not accord with our views. Under the circumstances of this case, to dismiss would make substance yield to mere technicality, and, to sustain the motion after two trials, in both of which the parties joined, would operate to delay, if not deny, speedy termination of the litigation sought by this action.

The trial, however, proceeded upon the wrong theory, as appears from the instructions in bills of exception 8 and 10, and thereby the jury may have been and probably were misled. The first instruction told the jury, in substance, that if anything remained to be done, such as measuring, counting and branding the logs, title thereto could not vest in the defendant until they were measured, counted and branded, omitting entirely the intention of the parties as to the time at which title should vest in the purchaser. *Morgan* v. *King,* 28 W. Va. 1; *Bank* v. *Napier,* 41 W. Va. 481; *Buskirk* v. *Peck,* 57 W. Va. 360; *Justice* v. *Moore,* 69 W. Va. 51; *Moore* v. *Patchin,* 76 S. E. 426. "Whether a sale of personal property is completed, or only executory, is to be determined from the intention of the parties as gathered from the contract, the situation of the thing sold, and the circumstances surrounding the sale." "Where the goods sold are sufficiently designated, so that no question can arise as to the thing intended, it is not absolutely necessary that they should be in a deliverable condition, or that the quality or quantity, when the sale depends on either or both, should be determined; they are mere circumstances indicating intent, but are not conclusive." *Hood* v. *Bloch,* 29 W. Va. 244. This instruction, omitting, as it did, this essential element of intention should not have been given; nor should the one contained in bill of exceptions 10. The facts did not warrant the latter. The logs were hauled and substantially, though perhaps not skill-

fully, bound together in a floatable condition about the date of the execution under which plaintiffs trace title. They were, as already stated, at first levied on as a "raft," and not as separate logs. If so, they had been hauled, and doubtless rafted, although it may be that some of the logs purchased by defendant in addition to those involved in this action were not hauled at that time. But they were not levied on or sold under the execution, and therefore are not now involved.

Defendant's instructions contained in bills of exception 15 and 16 should have been given, for reasons heretofore stated. They properly propounded the law applicable to the facts of the case.

¶The court should have permitted the witness Beall to answer the questions by defendant's counsel, shown in bills of exception 2, 3, 4, 5 and 6, because plaintiffs' witnesses J. M. Lynch and M. B. Summers testified to the same matter, and no sufficient reason appears for refusing Beall's on the same subject. If a proper inquiry, Beall should with propriety have had an opportunity to admit or deny their statements.

Invalidity of the sale under the execution, because the purchaser was not present at the time of sale, is also relied on by defendant. At the instance of the constable, he offered one hundred dollars, a definite and fixed sum, and to that extent only was the constable authorized to cry his bid. 2 Freeman on Executions, 2nd Ed., § 292, says: "The officer making the sale can not act as the agent of a person desirous of bidding. He can neither bid for himself nor for another. We apprehend that this rule must be confined to cases in which the officer, in acting as agent, would be expected to exercise his discretion in making bids, and to purchase the property at the lowest price for which it could be obtained. It ought not to be extended to cases where he is authorized by letter, or otherwise, to offer a specified amount on behalf of an absent bidder." This we think is the true rule.

From what has been said, the conclusion is to reverse the judgment, set aside the verdict, and grant the defendant a new trial.

*Reversed, and New Trial Granted.*