# CHARLESTON.

### R. H. THOMAS CO. v. LEWIS, HUBBARD & Co. *et al.*

### Submitted October 17, 1916.   Decided October 31, 1916.

1. SALES—*Operation and Effect—Transfer of Title.*

    Where a chattel sold is not then in a deliverable condition, and the order therefor is executed by the manufacture and construction of the article, the buyer acquires no title thereto until it is delivered in its finished state, although he may have paid therefor in advance.   (p. 141).

2. SAME.

    Where by the agreement anything remains to be done by the vendor to put the goods in a condition in which the buyer is bound to accept them, or in a deliverable condition, performance thereof is a condition precedent to the vesting of title, in the absence of circumstances indicating a contrary intention.   (p. 143).

3. LANDLORD AND TENANT—*Rent—Distress—Property Subject.*

    The several parts of a trade fixture, a soda fountain, although purchased by a tenant under an entire contract duly recorded reserving title until payment of the purchase price, are not subject to distress and sale for unpaid rent due the lessor until they are constructed and equipped as a soda fountain in readiness for use by the tenant, as agreed by the parties to the contract, although theretofore placed on the leased premises.   (p. 143).

4. SALES—*Operation and Effect—Transfer of Title.*

    Whether a sale of a chattel is complete to pass title, or executory only, is to be determined from the intention of the parties, as gathered from the contract, the character of the thing sold, the use for which it is intended, and the circumstances surrounding the sale.   (p. 143).

5. DETINUE—*Judgment—Requisites.*

    Where the proof in detinue is insufficient to support any verdict other than one finding for the plaintiff, wherefore defendant can suffer no prejudice, a judgment for the possession of the property if it can be had and if not for the value ascertained by the jury, conformable with §6, ch. 102, Code, and identifying it by the description contained in the summons and declaration, is not in such circumstances erroneous merely because the verdict found ''for the plaintiff the sum of $523.22,'' that amount being within two dollars of the value of the property as proved on the trial.   (p. 145).

Error to Circuit Court, Kanawha County.

Action by the R. H. Thomas Company against Lewis, Hubbard & Co. and others. Judgment for plaintiff, and defendants bring error.

*Affirmed.*

*Burdett & White* and *Payne, Minor & Bouchelle,* for plaintiffs in error.

*Cato & Bledsoe,* for defendant in error.

LYNCH, JUDGE:

In detinue brought to recover possession of a soda fountain and appurtenances sold by the plaintiff, R. H. Thomas Company, a corporation, to M. Mathews, trading as M. Mathews & Company, under a contract in writing dated February 8, 1913, reserving title to the property until paid for as therein recited, judgment for plaintiff for the possession thereof if to be had or in lieu thereof the value ascertained by the jury was recovered; and defendants assign error.

The price of the article sold, as stated in the agreement, was $1195, of which $50 was paid cash, and, except $189 which was to be paid upon "receipt of the bill of lading or tender of the goods" and except the last payment of $44, the residue was to be paid in monthly installments of $24 each, for which notes were executed. The agreement contains this paragraph: "It is agreed that the apparatus and appurtenances in this order shall remain the absolute property of the R. H. Thomas Company until paid for; and it is further agreed that I (the purchaser) am to keep the property insured until the termination of this contract, loss if any payable to the R. H. Thomas Company as its interest may appear." The purchaser was a married woman conducting a confectionery in a room leased of J. F. Butts in Charleston, in which the component parts of the fountain were delivered about April 15, 1913. They were assembled and constructed, as virtually required by the contract, by agents of the seller, and installed in the tenement ready for the use intended, about April 24, 1913, the exact date not being definitely ascertained. On that day the contract was duly admitted to record in the Kanawha county clerk's office.

Before final payment óf the stipulated price, J. F. Butts caused the tenant's stock of goods and equipment, including the soda fountain and other articles sold Mrs. Mathews by plaintiff at the same time, to be distrained and sold to satisfy arrearages of rent due him for the months of May and June, 1915; W. E. Connell being the purchaser at an amount sufficient to discharge the rent then unpaid, who without removing the property resold it in bulk to Joseph Sahley for $1325. That sum included the rent arrearage, a judgment of Lewis, Hubbard & Company, an unliquidated account of the Kanawha Drug Company, and the balance due R. H. Thomas Company, as seems to be admitted. Certainly it is not denied. These liabilities Connell paid out of the proceeds of the sale to Sahley, with the exception of the one due the plaintiff.

Out of these facts have arisen various adverse contentions as to the rights and equities óf the parties interested. It is argued, first, that, as distress for rent "may be levied on any goods of the lessee  *  *  found on the premises" (§11, ch. 93, Code), the soda fountain, being found thereon, was chargeable by the landlord, unless "when carried on the premises" it was subject to a lien valid against the creditors of the delinquent tenant. If it be conceded that before installation of the fountain its separate parts were subject to distraint for rent then due, the fountain was and remained liable to levy for any rent thereafter accruing while the fountain remained on the leased premises or within thirty days after its removal therefrom. Otherwise stated: if before the installation of the fountain and recordation of the instrument reserving the title the individual factors were liable to distraint for any arrearages of rent then due, the fountain when assembled and installed remained thereafter liable for any subsequent arrearages while it remained on the leased premises and within thirty days after its removal therefrom, but not to exceed in amount one year's rental. Such is the plain intendment of the statute, as manifestly shown by its explicit terms. There is no escape from this conclusion, unless subsequent provisions of the same section furnish the avenue thereof. For "if the goods of such lessee  *  *  when carried

on the premises are subject to a lien which is valid against his creditors, his interest only in such goods shall be liable to such distress''; or ''if any lien be created thereon while they are upon the leased premises they shall be liable to distress, but for not more than one year's rent''. These clauses do not restrict or limit the rights of a purchaser of property of a tenant sold under a distress warrant for rent, except where the property is encumbered by a lien created by the tenant before the property is taken upon the leased premises. In the latter event, the purchaser takes only the interest of the tenant therein. But if a lien valid against his creditors be created by the tenant after the property is taken upon the premises, no such limitations or restrictions are imposed, and the purchaser takes complete title to the property.

There is no merit in the contention that the landlord can acquire a lien upon the property of the tenant while on the leased premises only by the procurement and levy of a distress warrant. The statute, as construed in *Anderson* v. *Henry,* 45 W. Va. 319, and *Huffard* v. *Akers,* 52 W. Va. 21, itself gives the lien, which attaches immediately when the property of the tenant reaches the premises, and continues while it remains thereon and for a period of thirty days after its removal therefrom.

Did the fountain become liable under the statute until its installation in the property occupied by the tenant? Mrs. Mathews evidently did not purchase the constituent factors of a soda fountain; she bought an assembled and installed soda fountain. For the several parts she apparently had no use whatever, and probably could not have assembled them into a completed condition, and did not undertake that task, performance of which doubtless required skill and experience. On the contrary she required, and it was clearly a part of the contract of sale, that plaintiff should install the fountain in place in the property occupied by her; and not until it had effected that object, as it actually did effect it, can it reasonably be said the fountain as such, the thing she bought and for which she bound herself to pay, was subject to levy for rent then or thereafter chargeable to the tenant, whereby

more than her interest therein could vest in the purchaser at a sale under such levy.

That no delivery of the fountain by the seller to the purchaser was intended or effected until it was installed for actual service seems indisputable, as well as the fact claimed by the plaintiff and not controverted that such installation and delivery did not occur prior to the date of the recordation of the reservation of title. Indeed, it appears highly probable the work necessary to effect the installation was not completed until April 26, two days after the contract of purchase was admitted to record. The uncontradicted testimony tends to show with reasonable certainty that the fountain was not equipped for use until after the 24th of that month. B. Mathews, husband of the purchaser, said the ornamental tile wainscoting of the side walls of the room occupied by her, then in course of construction at the instance and expense of the tenant, was not finished until April 26 and that on that date the fountain had not been installed. Merrifield, a painter employed by Mrs. Mathews, confirmed this statement, as did also Beleal, and no one contradicted them.

While the contract of purchase, for such it is although in the form of an order, does not definitely require installation by the seller, it indicates that purpose beyond doubt. The parties thereto so intended it, and apparently necessarily so. It was agreed that in performing that work the seller was excused from doing or bearing the expense of any electrical or plumbing labor in connection with the installation, implying that before actual delivery was intended the fountain was to be constructed, adjusted and equipped ready for the immediate use of the purchaser in the room occupied by her in the conduct of the business in which she was then engaged.

The general and well recognized rule in such cases is that the title, although not expressly reserved and *a fortiori* when expressly reserved, remains in the seller until the article is delivered complete, unless from the contract it is apparent the parties intended to pass title to so much of the chattel as was compensated for by payments made periodically in the course of the construction thereof. If the chattel sold is not in existence when the contract is made, as manifestly in this

case it was not then in existence, and the order therefor is executed by the manufacture and construction of the thing sold, the buyer acquires no title thereto until it is delivered in its finished state, although he may have paid therefor in advance. *Mucklow* v. *Mangles,* 1 Taunt 318; *Sanford* v. *Wiggin Ferry Co.,* 27 Ind. 524, declaring this rule to be well recognized in most if not all jurisdictions, and that if any conflict exists it "is due not to any dispute about the general rule but rather to the application of it to the varying facts of each case and to the desire of the courts to give the intention of the parties first consideration in determining the question whether title has passed."

. Where by the agreement the vendor is to do anything to the goods for the purpose of putting them into that state in which the purchaser is bound to accept them—or, as it is sometimes worded—into a deliverable state, the performance of these things, in the absence of circumstances indicating a contrary intention is to be taken as a condition precedent to the vesting of the property. 1 Mechem on Sales §504; *Morgan* v. *King,* 28 W. Va. 1; *Hood* v. *Bloch,* 29 W. Va. 251. See also *Young* v. *Edwards,* 64 W. Va. 68; *Moore* v. *Patchin,* 71 W. Va. 192. If the contract be entire, the purchaser's acceptance of the article can not be enforced in an incomplete condition, where there is no waiver by him. The *Elgee Cotton Cases,* 89 U. S. 180. And, although under such contract part of the goods has been completed for delivery and delivered, no title passes to that part unless acceptance thereof and waiver of delivery as to the residue by the vendee appear from the proof. *Kern* v. *Tupper,* 52 N. Y. 550. Title vests only when "nothing further remains to be done to put the goods into that state, place or condition in which the purchaser is bound to accept them". *Bond* v. *Greenwald,* 4 Heisk. (Tenn.) 453; *Groff* v. *Belcher,* 62 Mo. 400. To require the vendee to perform a contract of sale because he received part of the goods sold, it must appear, from his admission or the facts and circumstances when the contract is entered into, that he accepted and received such part as a partial fulfillment of the contract. Williston on Sales §94. The legal presumption is that "the buyer does not intend to become owner

of anything until there can be final appropriation of the whole": *Id.* §277. Whether a sale of personal property is complete to pass title, or executory only, is to be determined from the intention of the parties as gathered from the contract, the situation of the thing sold, and the circumstances surrounding the sale. *Lynch* v. *Merrill*, 72 W. Va. 514.

While any act required by a contract of sale of a trade fixture, to be manufactured and delivered, remains to be done to put it in a state of readiness for delivery and use, title does not vest in the buyer, but remains at the risk of the seller. *Trigg Co.* v. *Bucyrus Co.*, 104 Va. 79; *Machine Co.* v. *Gay*, 108 Va. 649. The facts of the case last cited are these: A manufacturer sold a purchaser one of its traction engines, which was shipped "knocked down", consigned to the manufacturer at the point of destination. Of the arrival of the engine in that condition the purchaser was notified and requested to attend the rehabilitation of the parts, but was not present. They were constructed by the manufacturer's agents, who to test the engine generated steam therein by the use of wood instead of coal, without a spark arrester, and in driving it by the house of Gay caused its destruction by fire kindled from sparks emitted from the engine, and Gay sued the manufacturer for loss of the house. The court said, in effect, that, although the contract designated no place of delivery, the mere notice to the purchaser of the arrival of the engine at the station, coupled with ' request to witness its construction, did not constitute a delivery so as to make him liable as purchaser, in the absence of any assumed control of the engine by him. And in the opinion the court further said: "The order constituting the contract of purchase, taken as a whole, precludes the idea that the arrival of the engine was to be regarded as its delivery to the purchaser. The vendee was under no obligation to receive the engine until it was constructed and in good working order. The inference is irresistible that after Floyd and his assistant had put the engine together it was run by them up and down the hill mentioned, for the purpose of testing it and determining whether it was in proper condition to be delivered to the company." So where a dealer engages to furnish an engine

to a tenant and install it, under the superintendence of the seller, not as a permanent part of the leased premises but merely as a trade fixture, the vendee is not liable to the vendor for destruction of the engine caused by fire occurring after partial and before completed installation and so before its delivery and acceptance by the buyer, the destruction not being attributable to the fault of either party. *Fairbanks* v. *Drug Co.*, 42 Mo. App. 262.

The doctrine of the decisions cited, when applied to the facts of this case, supports the view that the mere placing of the parts of the fountain upon the leased premises was not a delivery of it within the contemplation of the contract and statute, so as to complete the sale and render the property liable to distraint for rent except as provided in the first clause of §11, ch. 93, Code. Besides, this interpretation, sustained by ample authority, secures to the lessor payment of the rent due, harms no one concerned, and results in manifest justice, since, as we have seen, the sale to Sahley was intended to be and indeed was for an amount sufficient to cover all lien liabilities against the tenant so far as ascertainable from the record before us. It is not contended, and if it was the contention has no merit, that, although not delivered until set up in the leased premises, the fountain was not chargeable with payment of the liabilities so satisfied, though perhaps not in the order of the payments as made, excepting the account of the Kanawha Drug Company (because no lien therefor was acquired by it). For, as the reservation was recorded before the judgment paid was rendered, the claim first in priority was the arrearage of rent, and the second the balance due plaintiff. The failure to apply the proceeds of the final sale in the order specified doubtless is immaterial if the plaintiff receives the balance remaining due it on the original contract. These conclusions relieve from the necessity of discussing the propriety of the instructions given and refused; for they were proper or improper to the extent they did or did not contravene the principles governing the transfer of title.

The jury rendered a verdict for plaintiff embodied in this language: ''We the jury find for the plaintiff the sum of

$523.22", that amount being two dollars less than the balance actually due it. This verdict plaintiff asked the court either to amend or direct the jury to reconsider and return in a different form. Although defendants did not object to the motion, the court refused to do as requested, apparently upon the theory that "if the verdict be for the plaintiff, and he be not already in the possession of the property claimed, the judgment shall be that he recover the possession of said property if a recovery thereof can be had, and if not that he recover the value thereof as found by the verdict" (§6, ch. 102, Code), and entered judgment accordingly. With these terms it strictly complies. No satisfactory reason appears to warrant refusal of the motion. The only thing done by defendants in the nature of protest was their motions to vacate the judgment and enter one in their favor notwithstanding the verdict.

Can the verdict stand as the basis of the judgment actually entered? In *Avery* v. *Avery*, 12 Tex. 42, an action of detinue to recover possession of a slave named John, the form of the verdict was: "We the jury find for the plaintiff with $80 damages and costs of suit". On the verdict the judgment was that the plaintiff have and recover the negro boy John described in her petition, and that the sheriff having the slave in custody deliver the possession to plaintiff. In the opinion it is said: "The verdict is not as perfect in form as it should have been; but it has been uniformly decided by this court that if by reference to the record any uncertainty in the verdict can be explained it will be sufficient to sustain the appropriate judgment".

The language of the verdict, "We find for the plaintiff", is substantially a finding of the matter in controversy. While in this state no statute prescribes any definite form of verdict in a detinue action, and expressly requires judgment for the plaintiff in the form prescribed by section 6 of chapter 102 where the finding is in his favor, the usual requirement is that the verdict shall state the property sued for, and, where there are several items, affix to each of them the value ascertained by the jury. If, however, for any reason, the value is not found or returned, the court before accepting the ver-

dict may cause it to be amended, or "if the verdict omit
price or value the court may at any time have a jury empan-
eled to ascertain the same". *White* v. *Emblem,* 43 W. Va.
819.

Though in *Timber Co.* v. *Ferrell,* 67 W. Va. 14, the verdict
sustained as sufficient found for the plaintiff the timber "in
the declaration described", and separately affixed the value
of each stack or rick, *arguendo* the opinion says: "The pur-
pose of description in the pleading required to be given of
property in an action of detinue is to put the defendant on
notice of what he is expected to defend and also for the pur-
pose of constituting a recovery in the action, if a recovery
can be had, a bar to a second action for the same property.
\*   \*   The verdict, read in the light of the description given
in the declaration, is also sufficiently descriptive of the prop-
erty". The verdict in the case cited does speak by reference
to the declaration. Here there is lacking any attempt to as-
sociate the pleading and verdict. If to formal requirements
we must rigidly adhere, although we can see no harm to any
litigant can result by a slight departure from antiquated pro-
cedure, a reversal must follow. That course, if pursued, nec-
essarily would mulct in costs and damages a plaintiff who
vainly endeavored to effectuate a cure of the alleged infirm-
ity. Such procedure works injustice rather than to promote
substantial justice without harm or injury to the adversary
party. The summons and declaration, with exactness and
precision, point out the property the right to the possession
of which or the recovery of its value is the subject matter of
the suit. Defendants knew what they were required to de-
fend. Read in the light afforded by the declaration, the
judgment furnishes ample protection against further litiga-
tion as regards the same property. How then, can they be
said to be injured?

It is apparent no verdict other than one for plaintiff could
be rendered. Defendants failed to prove facts sufficient to
warrant a finding for them. Indeed, it is evident the proof in
its entirety showed plaintiff was entitled to the possession of
the property sued for, if it can be had, or its value if it can
not be had. Scarcely is there a fact disputed upon the trial.

For the most part, defendants directed their proof to an ascertainment of the exact date of the actual delivery of the property, for the purpose of showing its liability to the lien for rent. They did, it must be admitted, undertake to sustain their right to charge the items of property which it appears entered as extras into the construction of the completed fountain and purchased along with and as parts of it, though not necessary for its equipment. These did enter into its construction, and thereafter the purchaser used them in connection therewith. That title thereto was reserved, and the reservation recorded before the right of distraint was consummated, the proof is equally conclusive. But, if not, it is manifest defendants have no just cause of complaint, if payments made by the purchaser prior to the time their right to levy on the property attached the plaintiff had applied, as of right it could apply them, in discharge of the balance due on the contract of sale.

Our order will affirm the judgment.

*Affirmed.*