# CHARLESTON.

C. DE T. B. REVELLE *et al. v.* ROBERT E. McQUAY, *et als.*

Submitted November 4, 1919.   Decided November 11, 1919.

1. SALES—*Intent of Parties Governs Passing of Title.*

   Whereby the terms of a contract for the sale and purchase of personal property, in this case lumber maufactured and to be manufactured and placed on stick in a mill yard, the parties make or manifest their intentions to pass the title to the purchaser when so placed on stick at the mill and before delivery thereof f. o. b. cars at the railroad, their intentions so manifested must be allowed to govern.   (p. 132).

2. FRAUDULENT CONVEYANCES—*What Constitutes Unlawful Preference.*

   Payments by the purchaser of such property, after having so acquired right and title thereto, and after having paid the seller the full purchase price therefor, to a creditor of the seller, in consideration of service rendered or to be rendered by him to the purchaser, to be credited on account of the seller, become insolvent, are not unlawful preferences voidable as such under section 2 of chapter 74 of the Code, and recoverable from such creditor in a suit by other creditors of the insolvent debtor.   (p. 132).

Appeal from Circuit Court, Randolph County.

85 W. Va.

Suit by C. De T. B. Revelle and others against Robert E. Mc-
Quay, the Laurel River Lumber Company, and others. Decree
for plaintiffs, and defendant Laurel River Lumber Company ap-
peals.

*Affirmed in part. Reversed in part. Remanded.*

*Talbott & Hoover,* for appellant.
*A. M. & Neil Cunningham,* for appellees.

MILLER, PRESIDENT:

In a suit by creditors of McQuay the principal question pre-
sented by the appeal of the Laurel River Lumber Company is
whether as alleged in the bill and denied in the answer but
decreed against appellant, it obtained from McQuay a prefer-
ence in the sum of $2,094.77, or in any sum, rendered void as
such by section 2, chapter 74 of the Code.

The record shows that the alleged preferences, aggregating
$2,094.77 and decreed to the special receivers, consisted: first,
of a check of the Reese-Sheriff Lumber Company, dated March
6, 1915, payable to appellant, for $500.00; second, of three
items, one of May 28, 1915, for $96.74, one of June 15, 1915,
for $196, and the other of September 11, 1915, for $15.06,
proceeds of the sale of certain lots of lumber; third, the sum of
$1,286.97, the value of certain lumber turned over to appellant,
through McQuay, by the Reese-Sheriff Lumber Company, all
ante-dating the institution of the plaintiffs' suit.

The main contention of the appellant is that the money so
paid and the lumber turned over by the Reese-Sheriff Lumber
Company, though the lumber was purchased by that company
from McQuay, was at the time of such payments and delivery
of the lumber to appellant the money and property of the
Reese-Sheriff Lumber Company and not of McQuay, and that
plaintiffs and the other creditors of McQuay have no right to
pursue the money and property so received by appellant into
its hands as unlawful preferences.

The bases of appellant's claim is: first, that by contract in
writing between McQuay and the Reese-Sheriff Lumber Com-
pany, made September 15, 1914, and recorded in the county
clerk's office November 23, 1914, McQuay, as party of the first
part, agreed to sell and did sell, and the Reese-Sheriff Lumber

Company agreed to purchase all the lumber of the various kinds and amounts therein set forth, which McQuay should manufacture on his operation located at Jenningston, West Virginia, and which was to be manufactured during the season of 1914 and the early part of 1915, in accordance with the orders of the purchaser, the contract describing in detail the approximate amounts of each kind of lumber covered thereby.

Another part of the agreement and one relied on to support the finding of the commissioner and the decree complained of, is that the prices agreed upon were f. o. b. cars at Hendricks, West Virginia, on the Western Maryland Railroad, implying, if not stipulating, as it is contended, that the title to the lumber should not pass to the purchaser until delivered on board cars at Hendricks. But a subsequent paragraph of the contract and one relied on to show the intention of the parties to pass title earlier, is the agreement on the part of the lumber company to make an advancement of $8.00 per thousand feet by its notes on or about the fifteenth of each month for all lumber manufactured and put on sticks the previous month, of the various kinds set forth, the same to be marked up as the property of the lumber company as per their brand, the lumber to be shipped out as fast as good shipping conditions would permit, the balance after deducting the $8.00 per thousand feet advanced to be made on the regular terms of cash less 2% discount.

Another provision of the contract cited in support of the decree and the construction of the contract by appellees is that McQuay agreed to take out a policy of life insurance for $5,000.00 in favor of the lumber company to be held as additional collateral security to cover said advancements.

The commissioner to whom the cause was referred to state the account was of opinion that this contract did not vest title to any of the lumber contracted for until delivery f. o. b. cars at Hendricks, and that although the payments in money and the lumber made to appellant represented lumber actually manufactured and put on stick and branded as provided in the contract, and paid, not by McQuay, but by the Reese-Sheriff Lumber Company, nevertheless the lumber was not the property of the lumber company but of McQuay, wherefore a preference in favor of appellant, voidable as such by the statute, and the

court below, in overruling the exceptions of appellant thereto, adopted the view of the commissioner and pronounced the decree complained of.

We can not agree with the court and commissioner in their construction of the contract. In our opinion it was the manifest purpose of the parties that the title to the lumber was to pass to the purchaser as and when it was put on stick and branded as stipulated. What else could the parties have intended in so disposing of the lumber and providing for payment by advancements? How else was the purchaser to be protected in its advancements except as provided in the contract? When by the terms of the contract the parties make or manifest their intentions to pass title before delivery, their intentions must be allowed to govern; so held in the recent case of *Poling* v. *Hoffman* 84 W. Va. 199, 99, S. E. 445; *Thomas* v. *Lewis, Hubbard & Co. et al.*, 79 W. Va. 138; *Lynch* v. *Merrill*, 72 W. Va. 514, 516; *Hood* v. *Bloch Bros.*, 29 W. Va. 244; *Moore* v. *Patchin*, 71 W. Va. 192. That the purchaser had fully complied with its contract at the time of the payments and delivery of the lumber to appellant is not questioned. So much as to the location of the title to the lumber when disposed of to appellant.

The facts and circumstances attending the payments of money and delivery of lumber to appellant are these. McQuay's mill was located on the private railroad of appellant, and he and the Reese-Sheriff Lumber Company had no way of getting the lumber to market except over this private railroad. McQuay in his operations had incurred a large indebtedness to appellant for supplies for his men, and at this stage of his account, appellant gave notice to McQuay and the Reese-Sheriff Lumber Company that it would not haul out any more of the lumber until its account was paid or secured to be paid. There was then quite a large quantity of the lumber on the mill yard branded as the lumber of the purchaser. Desiring to remove this lumber, the Reese-Sheriff Lumber Company, through a representative present on the ground, at first agreed to settle appellant's account against McQuay with its notes; but after consideration, instead of making its notes as agreed, it sent appellant its check for $500.00 and directed McQuay, on condition that appellant would allow the six car loads of lumber

then at the mill to go out on its order, to turn over to appellant the residue of the lumber on the yard, estimated at about 150,000 feet, or a sufficient part thereof to satisfy its account. This proposition was accepted, the six cars of lumber shipped out, and the lumber remaining in the yard turned over to appellant, and, except a small part thereof, sold and shipped out by it, and the money derived therefrom, together with the $500.00 cash payment by the Reese-Sheriff Lumber Company, make up the sum of money decreed against appellant as an unlawful preference. If the cash payment of $500.00 and this lumber, when so paid and delivered to appellant, was the property of the Reese-Sheriff Lumber Company, as we hold it was, it can not detract from the rights of appellant that the arrangement was in part made and carried out through the agency of McQuay, or that one or two of the small lots of lumber sold was sold and billed out in his name. The question is, whose lumber was it, and who was actually entitled to the proceeds thereof? As to this, as already indicated, we think there can be but one answer. It is proven by McQuay and not denied by anyone, that at the time the Reese-Sheriff Lumber Company made the $500.00 payment to appellant and turned over to it the lumber, the purchaser had then advanced to McQuay on this lumber at least $5,000.00 in excess of the price of the lumber actually shipped out by it, and which, including the cash payment of $500.00, exceeded the value of the lumber turned over to appellant. It is said the Reese-Sheriff Lumber Company is not complaining here; which is true; but what of that? How does that fact effect the rights of appellant? The Reese-Sheriff Lumber Company is a non-resident corporation; whether served with process does not appear. In the order of reference its name is not recited among the other defendants served with process or appearing in the cause; nor does any subsequent decree recite service of process upon it. As it clearly appears that little will be left out of the estate of McQuay for distribution to general creditors, it is not unlikely, if served with process, it was regarded not worth while to bother with a defense.

Our conclusion is to reverse the decree in so far as it adjudges against appellant the sum of $2,430.59 with interest, as an unlawful preference, and as to that part of the subject mat-

ter dismiss the bill. When the case goes back to the circuit court the decree in favor of appellant as a general creditor should be corrected by debiting it, as of the proper dates, with the payments made on behalf of McQuay by the Reese-Sheriff Lumber Company. In all other respects the decree will be affirmed.

<em>Affirmed in part. Reversed in part. Remanded.</em>