# CHARLESTON.

## FEELY *v.* BRYAN.

Submitted January 26, 1904. Decided April 1, 1904.

1. MORTGAGE.

   Any writing charging a debt on property, though not a formal mortgage, is an equitable mortgage or lien. (p. 587.)

2. MORTGAGE AFTER LOAN—*Preference.*

   Under section 2, chapter 74, Code 1899, if one lend money to a solvent person, with the agreement that a mortgage is to be made on certain property to secure loan, and later, when insolvent, the borrower makes the mortgage it is not a good preference as to other debts existing at the date of the mortgage. (p. 588.)

3. TRANSFER—*Insolvent Debtor.*

   A transfer or charge by an insolvent debtor, free from actual fraudulent intent as to creditors, preferring a particular debt is not, as to debts contracted after its recordation, a preference contrary to section 2, chapter 74, Code 1899. (p. 589.)

4. INSOLVENT DEBTOR.

   In a suit to impeach a preference made contrary to section 2, chapter 74, Code 1899, any creditor filing his demand for allowance before a commissioner under a reference to ascertain the insolvent's debts, thereby unites in the attack upon the unlawful preference, and is entitled to share in the insolvent's estate. (p. 589.)

5. INSOLVENT DEBTOR.

   Several creditors, with separate demands, attack a mortgage as a preference condemned by section 2, chapter 74, Code 1899, and a decree adjudges the property to be for the benefit of all the insolvent's creditors, and decrees out of it particular sums to the several creditors. These sums cannot be added to give jurisdiction to the Supreme Court for an appeal by the creditor preferred by such mortgage. (p. 590.)

Appeal from Circuit Court, Tucker County.

Bill by W. A. Feely against S. J. Bryan and others. Decree for defendants and plaintiff appeals.

*Dismissed.*

J. P. SCOTT, for appellant.

CUNNINGHAM & STALLINGS, for appellees.

Brannon, Judge:

Bryan and Gillespie had a drug store in Tucker county, and Bryan purchased Gillespie's interest, and to pay for it Bryan, on 22d June, 1900, borrowed $1,100 of Feely upon the agreement that Bryan was to execute a deed of trust or mortgage on the drug store to secure Feely. No mortgage was at the time given; but on 27th October, 1900, Bryan made a sealed instrument reciting that he was indebted to Feely in the sum of $1,-100, and saying, "and for the security of said sum I do hereby mortgage and assign" to the said W. A. Feely a soda fountain, some bottles, and the stock of drugs. This obligation was ante-dated to 22d June. It was acknowledged and recorded 27th October. On February 19, 1901, the drug store stock was levied upon under three executions in favor of Cunningham & Stollings, The S. Wilson Cigar Company and O. M. Haines for several debts; whereupon Feely obtained an injunction restraining sale under the executions. The court appointed a receiver and he sold the stock at $700, and the fund is in court to abide its order. In this suit Cunningham & Stollings, the Cigar Company and Haines filed answers averring that when Bryan made the mortgage to Feely, Bryan was insolvent, and therefore it operated for the benefit of all his creditors under section 2, chapter 74, Code. Upon the evidence the court held that Bryan was insolvent at the time of making the mortgage, and sent the case to a commissioner to ascertain all debts of Bryan, and fix their shares in the fund. He reported a large number of debts, among them debts contracted by Bryan after the loan and after the mortgage. He also reported Bryan was insolvent. Feely excepted to the finding of Bryan's insolvency, and because debts of Haines & Co., Coffman and James Clark Distilling Company were reported to share in the fund, those debts arising after the recordation of the mortgage. The court decreed that all the debts share *pro rata* in the fund, and Feely appeals.

Counsel contends that the obligation executed by Bryan to Feely is nondescript, contains no words of grant like a deed of trust, and cannot operate as a lien or mortgage. Under the principle often stated that every express agreement in writing showing intent to make some particular property, real or personal, security for a debt, or assigning or promising to assign it as such security, is an equitable lien or mortgage, this instru-

ment so operates. *Fid. Ins. Co.* v. *Railroad,* 33 W. Va. 761; 2
Am. & Eng. Dec. in Eq. 436, 441. I think the evidence clearly
shows that the findings of the commissioner and judge of the
fact that Bryan was insolvent on the date when the equitable
mortgage was executed is correct. But he was not at the date
of the loan, at which time he agreed to give a mortgage. What
is the effect of this agreement afterwards executed by the mort-
gage? Does it make the mortgage stand as if made at the
date of the loan? If it does, then it is a lawful preference
even under section 2, chapter 74, Code 1899, as a mortgage
given at the time of a loan is not a preference condemned by it.
I admit the rule suggested by counsel that for some purposes
equity regards that as done which is agreed to be done, and on
this principle the law is that an agreement to give a mortgage
for a valid debt is treated in equity as a mortgage. 1 Jones on
Mort. section 163. But we are dealing with a statute, and we
must go by it. It says that if a loan be made or other debt be
"contracted at the time such transfer or charge was made," it
is not a preference contrary to the statute, but a valid charge.
The requirement in letter is that the loan and mortgage must
be at the same time. A loan was made under agreement to secure
it by mortgage, and was afterward executed. The act declared
that mortgages made in contemplation of insolvency, with the
design to prefer one creditor over another, should operate for
the benefit of all, and provided that the act should not affect
a mortgage to "secure a debt or liability created simultaneously
with such mortgage." It was held that the mortgage had no
preference because not made simultaneously with the creation
of the debt. *Darnell* v. *Lewis,* 94 Ky. 455. See *Bank* v. *Hunt,*
11 Wall. 391. The court said the language means that the
execution of the mortgage and the creation of the debt must be
simultaneous. The promise to execute a mortgage in future
to secure a debt that day made is not a simultaneous act. Be-
sides, to substitute the promise for the act of executing the mort-
gage would allow a debtor, in contemplation of insolvency,
to make the preference that it was the object of the statute
to prevent. See *Ahern* v. *White,* 39 Md. 409. I confess that
my first impression was that as the loan bettered the estate of
Bryan, and as a mortgage would have been good if executed
when the loan was made, and as before any creditor had fixed
lien by execution on Bryan's property the mortgage was ex-

ecuted, it ought to be good. But first, there is the letter of the
act requiring the loan and mortgage to be contemporaneous,
and, second, any other construction would open wide the door
to defeat the good designed by the statute by allowing oral
evidence of a promise to make a mortgage. It gives fraud and
perjury a chance to do their work. We must give the act a con-
struction which will best protect the business world, and it is
apparent that safety to business will be promoted by the con-
struction we give. Therefore, we hold that said mortgage has
no preference over other debts.

But we hold the decree erroneous in allowing debts not ex-
isting at the date of Feely's mortgage, because the statute says
that the insolvent's property shall go *pro rata* to "all the debts
of such insolvent existing at the time such transfer or charge is
made." What possible equity can a subsequent creditor have
to complain of the mortgage unless kept off the record? All
the debts, so far as the report shows, are dated after the mort-
gage; but perhaps, and likely, some of the judgments were on
debts ante-dating the mortgage. The answer alleging they ante-
dated the mortgage was denied.

It is said that there is error in the decree in that it decreed
shares in the fund to people who did not attack the mortgage.

Only three creditors filed an answer attacking the mortgage,
but a number of others were reported as creditors of Bryan by
the commissioner. They did not otherwise appear. But it has
been held that when a case is before a commissioner to ascer-
tain debts a creditor may there informally present his claim,
though not a formal party, and thereby he becomes an informal
party, he thereby asks relief, and he can appeal. Hogg's Eq.
Prin. 614. *Wilson* v. *Carrico,* 50 W. Va. 336; *Dunfee* v. *Childs,*
45 *Id.* 155; *Woodward* v. *Polsley,* 14 *Id.* 211; *Belinger* v. *Sher-
man,* 23 *Id.* 656.

Observe that the statute allows him to come in at any time be-
fore final decree. By so coming in, without petition, he sub-
jects himself to the jurisdiction of the court and will by decree
be made to share the burden of costs, whether he agrees to do so
or not. So coming in is a sufficient attack on the preference.

The answer attacking the mortgage was filed more than four
months after the recordation of the mortgage, and was thus
too late; but there was no exception to that matter of it attack-

ing the mortgage. The answer makes no parties and is not formal as an answer calling for affirmative relief, yet is substantially sufficient as such, and had there been a plea of limitation to that matter of it, or an exception, it would have been error to decree on that matter.

Having come to the conclusion that there is reversible error, I run against the question of jurisdiction, as we must have jurisdiction to justify a reversal. No one of the creditors, except Feely, gets a sum out of the fund amounting to $100. Added they amount to more than that sum. Can they be added together for jurisdiction? The debts are distinct, have no unity; but combined they take from Feely more than the sum of $100. "Several and separate interests of different appellees cannot be united so as to make up the jurisdictional amount where such parties could not have united their interests, if a recovery had been had against them. Neither co-defendants nor co-plaintiffs can unite their separate and distinct interests for the purpose of giving appellate jurisdiction." "Separate judgments cannot be added to give jurisdiction; though the legal question may be the same, the judgments are distinct." 2 Cyc. 566, 567; *Henderson* v. *Wadsworth,* 115 U. S., p. 276. *Henderson* v. *Wadsworth,* 115 U. S. 276 applies the rule to both sides. "In suits to enforce separate liens it is the several amounts of each claim, not the aggregate sum of all in one suit, which determine the jurisdictional amount. The appellate court cannot acquire jurisdiction by uniting on an appeal two judgments wholly separate and distinct. 1 Ency. Pl. & Pr. 725. Upon these principles it was held that if several claiming under a trust deed suing the trustee for a settlement, obtain a decree directing him to pay each a separate sum, where the decree failed to charge him with an item over $100, there was no jurisdiction for appeal though the sums would aggregate over $100. *Fleshman* v. *Fleshman,* 34 W. Va 342. Several judgment creditors brought a suit to sell land to pay them which was dismissed, and they were refused right to add their judgments. *Umbarger* v. *Watts,* 25 Grat. 167. If the land owner had appealed, in case the judgments had been decreed against his land, the same result would have followed. Wherein is this case otherwise? True, several hundred dollars is taken from Feely, but each creditor has taken his own separate sum from him; it is a contest between him

and that creditor as to that sum. The suggestion *contra* is that it is a fund which is the bone of contention. So would it be as to the land against which several judgments are decreed. In *Bank* v. *Stout,* 113 U. S. 684, a bank claimed a fund over the jurisdictional amount, and several creditors sued to subject the fund, and several debts were decreed to be paid out of it, On an appeal by the bank it was held that it could not combine the several amounts decreed against the fund in order to give appellate jurisdiction. There as here the bank denied liability for the fund, claimed it as its own, and the debts decreed out of it damaged it more than the jurisdictional sum, if added. The court said: "This suit was not for the whole fund, but only for the complainant's *pro rata* share. After the suit was begun the intervening creditors were allowed to come in each for his separate share of the assets. On their intervention the case stood precisely as it would if each creditor had brought a separate suit for his separate share of the fund. The decree in favor of the several creditors has precisely the same effect, for the purposes of an appeal, that it would have had, if rendered in such separate siuts." In *Seaver* v. *Bigelow,* 5. Wall. 208. several creditors with separate debts sought to set aside a deed as fraudulent, and their bill was dismissed, and the court said they had separate demands which could not be added. In *Schwed* v. *Smith,* 106, U. S. 188, creditors sued to set aside a judgment and subject a fund realized by execution under it, and the fund was by decree taken from the party claiming under the judgment. On appeal he was not allowed to aggregate the several sums decreed against the fund for jurisdiction. That is this case. In *Gibson* v. *Shuefelt,* 122, 634 U. S. will be found a clear discussion of this subject, reviewing and discriminating Supreme Court cases. A debtor assigned property to secure a preferred debt of more than $5,000, and then for creditors generally, and two of his creditors sued in separate suits to set aside the preference, and a decree gave one of the creditors over $5,000, and to the other a less sum. On appeal by the preferred creditor it was held that there was no jurisdiction for him as to the party decreed less than $5,000, but as to the other there was. So in *Richard* v. *Lambert,* 12 How. 347, a libel was filed by several cargo owners against a vessel, and various sums decreed against it, some more, some

less than $2,000, but aggregating $10,000. The appeal by the ship owner was dismissed as to those appellees decreed less than the amount for jurisdiction, because no single libellant was decreed the jurisdictional amount. So in *Oliver* v. *Alexander,* 6 Pet. 143, where a number of seamen filed a libel against a vessel and each was decreed a less sum than required for jurisdiction; the case was dismissed and an addition of the sums refused. It was said that although the libels were in form joint, yet the decrees were several. So, under our statute involved in this case any number of creditors may unite in a suit to attack a preference, still that does not unify debts that are separate. The joint suit is only remedy, only procedure to avoid multiplicity of suits and accumulation of costs. In *Farmers Loan & Trust Co.* v. *Waterman,* 106 U. S. 265, a mortgage was foreclosed on a railroad, and the purchasers took it subject to debts of intervening creditors, and appealed from a decree ordering them to pay various sums amounting in all over the amount for jurisdiction, and the appeal was dismissed as to those who had not sums decreed up to that amount. So in *Hassall* v. *Wilcox,* 115 U. S. 598, a like decision was made where a trustee in a railroad mortgage appealed from a decree in favor of several creditors. The appeal was dismissed as to those recovering less than the jurisdictional sum, and retained as to those recovering more. In *Chamberling* v. *Browning,* 177 U. S. 605, creditors of Scott claiming under assignment from him sought to prevent attaching creditors from enforcing their attachments, and failing, appealed; but it was held that as the relief sought against the attaching creditors was "the defeat of distinct and separate claims of each attaching creditor, so far as it affected the real estate of Scott, and as no defendant was asserting a claim which aggregated the amount required to confer jurisdiction upon this court, the case is dismissed for want of jurisdiction." These cases show that each debt is separate, not added. For these reasons we hold that there is no jurisdiction to reverse the decree, though there is error in it. I might have avoided discussion of other matters than jurisdiction, had this question occurred to me before writing upon them; but as it is written, though it may be thought to be, for want of jurisdiction, not binding authority, yet the other points

decided reflect the opinion of all the members of the court, and therefore will be published.

Appeal dismissed for want of jurisdiction.

ON REHEARING.

Upon rehearing the question of jurisdiction for this appeal has been carefully reconsidered; but we are unable to change the decision that there is no jurisdiction for the appeal.

Feely's attorney seems to admit that if the litigation is not one between Feely and Bryan, there is no jurisdiction, and he therefore seeks to sustain the position that the contest is only between them, not one between the creditors of Bryan; and assuming this premise he would apply the ordinary rule between plaintiff and defendant in money demand, in other words between Feely, creditor, and Bryan, debtor, and say that it is the amount claimed by a plaintiff creditor against a defendant debtor which gives jurisdiction, not what the plaintiff recovers. But this premise is not correct. This is not a suit between Feely and Bryan. Bryan makes no contention against Feely; there is no issue between them. The contest is purely one between conflicting creditors of Bryan. They fight for the bone. Some of those creditors levied executions on the chattels on which Feely claimed a mortgage, and he filed an injunction against those executions based on his mortgage, and those creditors answer and seek to defeat the mortgage, or at least defeat its preference of Feely's debt and get their proportions. This shows it to be a litigation between creditors.

I think the authorities cited in the first opinion ample to deny jurisdiction; but I will add some further ones. A boat of the B. & O. R. R. Co. collided with a barge, and the owners of the barge and its cargo sued the boat, and one sum was decreed the owner of the barge, another to the owner of the cargo. The court held that the owner of the boat could not add the two recoveries for jurisdiction. *Ex parte B. & O. Co.,* 106 U. S. 5. The distinction between cases where there may and may not be aggregation of sums for jurisdiction is drawn in that case. Suppose any one of the creditors in this case had been denied his debt. He could not appeal. Neither could his adversary. The right ought to be mutual. 2 Cyc. 566; *Tupper* v. *Wise,* 110 U. S. 398; *Hawley* v. *Fairbanks,* 108 *Id.* 544.

In 2 Cyc. 569, we find that "Where several claim under the same title, the validity of which title is necessarily involved, the appellate court will have jurisdiction, notwithstanding the individual claim of no one of the plaintiff's exceed the juris- dictional amount, if the whole amount involved is sufficient." That does not apply in this case. That is where.the plaintiffs under a common or collective right sue, as in the case of dis- tributees suing for their portion of the personal estate of a decedent. _Shield_ v. _Thomas,_ 17 Howard 3. Where there is a common demand by several by one and the same title, and the sum recovered goes according to their several rights in dis- tribution, and the adverse party is not interested in the distri- bution, that is the case. But does that apply to a case where different persons are claiming different debts on different grounds, each of them being adverse to the party on a several ground? "Where several plaintiffs claim under the same title, and the determination of the cause involves the validity of that title, and the whole amount exceeds $5,000.00, this court has jurisdiction, as to all such plaintiffs, though the claim of none exceeds $5,000.00; but where the matters in dispute are sep- arate and distinct, and are joined in one suit for convenience or economy, the rule is the reverse as to claims not exceeding $5,000.00." _N. O. Pacific_ v. _Parker,_ 143 U. S. 42. In the case of preferences our statute, for convenience and economy to end all claims in one suit, allows different creditors to use one suit for relief, however diverse their claims may be; but that is matter of remedy, and does not show that they claim under one and the same title. In this case the debts were separate, not born of and supported by a common title. The creditors claimed against and over Feely's mortgage. That mortgage did not originate or sustain their rights. And does not _Fleshman_ v. _Flesman,_ 34 W. Va. 342, stand contrary to the above citation from 2 Cyc.?

In this case each creditor's debt aggrieved Feely only to its amount, and that too separately; each creditor took from the fund only his amount. Feely does lose more than a hundred dollars. So does the judgment debtor lose his land when divers judgments, each under one hundred dollars, are decreed against it. So the party charged to be a fraudulent vendee. He could not aggregate the debts decreed against him. If he has an ap- peal it is not on account of amount, but because the case in-

volves title to land. If there be a suit to annul a fraudulent conveyance and divers debts are decreed, and one creditor appeals and succeeds in reversal, it does not effect the decree as to other creditors not appealing, because they are separate debts. In this case the sums decreed to the creditors were not decreed collectively, or because of a common right. Some cases may be found to the contrary. We do not see that *Hix* v. *Roanoke*, 94 Va. 741, is. That was an appeal by a trustee representing a fund. The whole was in him, though afterwards to be distributed. *Freeman* v. *Dawson*, 110 U. S. 264. The case of *Winchester* v. *Colfelt*, 27 Grat. 690, adds the amounts decreed against the debtor for jurisdiction; but in the later case of *Williams* v. *Clark*, 93 Va. 690, the opinion, whilst following that case, condemns it as unsound and approves *Schwed* v. *Smith*, 106 U. S. 188, cited in the first opinion.

*Dismissed.*

DENT, JUDGE, *(dissenting)*:

The question in controversy here and in the circuit court, between Feely and the defendants was as to whether Feely's debt of $1,100.00 was entitled to priority over the other debts against the estate of S. J. Bryan. As to the amount and validity of the several debts, there was no question and there was no controversy in regard thereto. The defendants, however, attacked the plaintiff's deed of trust as a fraudulent preference under section 2, chapter 74 of the Code. The circuit court so held and the plaintiff appeals.

Said section 2 provides that such fradulent preference "shall be taken to be for the benefit of all creditors of such debter," thus making it a common source of title to all of them.

In the 1st En. Plead & Pract. 721, the law is properly stated to be "where several parties sue jointly for the recovery of money or property claiming under one common right, and the adverse party is wholly unaffected by the manner in which it may be apportioned in case of recovery, it is the aggregate sum of their several claims which determines the amount in controversy."

In the present case Feely is wholly unaffected by the manner in which the fund is proportioned among the creditors in case he is defeated. He claims the whole thereof by virtue of his

trust deed and they claim his trust deed is a fraudulent prefer-
ence as to them, and they under the statute are entitled to the
common benefit thereof. The statute permits and compels them
to sue jointly not as a matter of convenience, but because it
confers upon them a common benefit and a joint interest. A.
creditor may not sue separately to get the benefit of a fraudulent
preference, as he may sue to set aside a fraudulent conveyance,
but his suit is for the common or joint benefit of all creditors.
The validity of the preference is the joint matter of controversy,
and in so far as the person preferred is concerned, is the amount
of his lien, and so far as the other or attacking creditors are
concerned, is the joint amount of their debts if they are less
than sufficient to cover such preference, and if more than suf-
ficient, then the preference determines the amount in contro-
versy. The true rule is laid down in 2 Cyc. 569.

"Where several claim under the same title, the validity of
which title is necessarily involved in the determination of the
cause, the Appellate Court will have jurisdiction notwithstand-
ing the individual claim of no one of the plaintiffs exceeds the
jurisdictional amount, if the whole amount involved is suf-
ficient. And if the appellees right to sue and stand in judgment
against appellants on a contract, by the terms of which con-
tract more than the jurisdictional amount is involved, is de-
nied by appellants, this constitutes the matter in dispute."

"And where the amount decreed against appellant consists of
several sums in favor of various appellees, no one of which sums
would come within the jurisdictional amount, and the aggregate
of which amount is in excess of the jurisdictional limit, it is held
the defendant may appeal."

The amount in controversy here is undoubtedly the amount
of Feely's preferred lien, its validity as a preference being as-
sailed by those who are jointly interested in its overthrow, and
who if they succeed, are entitled to share in it as a common
source of title. The statute does not avoid it but holds it to be
for the joint benefit of all the creditors. *Keener* v. *O'Neil,* 39
W. Va. 515; *Argand Refining Company* v. *Quinn,* 39 W. Va.
535; *Wolf* v. *McGugin,* 37 W. Va. 552.