MONROE STURGILL, *et al.*

*v.*

LOVELL LUMBER COMPANY, *et al.*

(No. 10057)

Submitted September 21, 1948.

Decided December 14, 1948.

*Kingdon & Kingdon* and *Arthur R. Kingdon*, for appellants.

*Paul J. Carr*, for appellees.

HAYMOND, JUDGE:

Monroe Sturgill and twenty eight other persons, all former employees of Lovell Lumber Company, a corporation, instituted this suit in the Circuit Court of Wyoming County against Lovell Lumber Company, The Bank of Raleigh and Donald Hayhurst, as defendants, to enforce their unpaid lien claims for work and labor as such employees, amounting in the aggregate to approximately $6,000.00, against the property of the defendant, Lovell Lumber Company, to conserve and administer its assets and to settle its affairs. The original bill of complaint prayed for the appointment of a special receiver, and an injunction against the defendant, Donald Hayhurst, an attaching creditor, and the defendant, The Bank of Raleigh, to stay further action in a pending attachment proceeding and to prohibit the bank from disbursing any money held by it for the account of the company.

The suit was instituted July 14, 1947. On that day the original bill of complaint was filed in court, a receiver was appointed and an injunction, as prayed for, was granted. On August 16, 1947, the plaintiffs filed an amended and supplemental bill of complaint making James O. Ball, Sr., and James O. Ball, Jr., who were alleged to be partners trading as Ball Lumber Company, defendants to the suit, and attacking, as an illegal preference and as such void as against the plaintiffs and other creditors of the defendant Lovell Lumber Company, a transfer by it on July 1, 1947, of a quantity of

lumber to Ball Lumber Company in payment of a debt created by a prior exchange of machinery between them in April, 1947. To the amended and supplemental bill of complaint the defendant James O. Ball filed his separate answer in which he alleged that he transacted business under the name and style of Ball Lumber Company and denied that the transfer in question constituted an illegal preference. The court determined the issue raised by the amended and supplemental bill of complaint and the answer in favor of the defendant James O. Ball, Jr., and, by decree entered February 12, 1948, held that the transfer of the lumber did not create an unlawful preference. From that decree an appeal was granted by this Court.

In April, 1947, the vice president and the acting general manager of Lovell Lumber Company entered into an arrangement with James O. Ball, Jr., for the purchase by that company from him of a Diesel engine. In the negotiations it was agreed that the engine was worth $2,700.00 and that a smaller Diesel engine which was badly worn and out of repair, owned by Lovell Lumber Company, would be accepted by Ball at a value of $700.00 and that amount credited on the price for his engine. It was also agreed that the residue of $2,000.00 of the purchase price for the engine should be paid by Lovell Lumber Company in lumber instead of money. At the time Lovell Lumber Company, though still operating, was in financial difficulties and it did not have sufficient funds to enable it to pay the difference in the value of the two engines in cash. This situation, however, was not known to Ball who had previously had satisfactory business transactions with the company. The next day after the agreement was made the engine was delivered to Lovell Lumber Company by Ball and he accepted delivery of the smaller machine. At the time of the agreement Lovell Lumber Company had in its yard a supply of lumber which exceeded in value the residue of $2,000.-00 of the purchase price, but none of the lumber was delivered to Ball or set aside or earmarked for him and

no bill of sale or other instrument of title was signed or delivered.

The evidence discloses that the parties did not agree upon any definite quantity of the lumber then in the possession of Lovell Lumber Company to be taken by Ball or fix any time within which he should receive an amount sufficient to pay the residue of the purchase price. The parties to the transaction refer to it as a trade in which Lovell Lumber Company was to receive the delivery of the engine from Ball in exchange for the smaller engine and the future delivery of a quantity of lumber equal in value to the difference between the agreed values of the two machines. The vice president of Lovell Lumber Company testified that he agreed to give Ball lumber for the difference in the price of the two engines because his company did not have the cash to complete the purchase. The acting general manager of the company stated in his testimony that the difference of $2,000.00 in the price of the machines was to be paid in lumber but that no time was specified for its delivery and that Lovell Lumber Company got the engine from Ball about two months before it delivered the lumber which he received. Ball testified that the difference was not to be paid in cash, that there was lumber at the mill of Lovell Lumber Company when the arrangement was made; that it was to be inspected; and that when he received a quantity of lumber of the value of $2,000.00 the difference would be paid. Though he stated that some chestnut lumber was set aside for him, the understanding between him and Lovell Lumber Company at the time of the agreement was, in substance, that he could get the lumber for the difference in prices of the engines whenever he wanted it.

Lovell Lumber Company was unable to meet its pay roll on June 15, 1947, and about June 30, 1947, it ceased to do business as a going concern. According to the testimony of the receiver and the vice president of Lovell Lumber Company, which is not controverted, the com-

pany was insolvent on June 30, 1947. As of July 1, 1947, the value of its total assets was between $8,000.00 and $12,000.00 and its total liabilities were between $21,000.-00 and $30,000.00. An appraisement made for the receiver, dated and filed September 15, 1947, showed the total value of all its assets and property to be $7,721.36.

Sometime between June 10 and July 1, 1947, and when Lovell Lumber Company was insolvent, Ball received from the company deliveries of 100,180 feet of lumber at the current market value of $3,974.16. It delivered part of the lumber to a railroad car at Mullens for Ball and he took the remainder by truck from the premises of the company. The lumber received by Ball included practically all the lumber of the company at the time it was delivered. The quantity taken consisted of lumber at the plant when the agreement was made and a small amount which had been manufactured after the engines had been exchanged. A written receipt for the lumber, dated July 1, 1947, was signed and delivered by Ball to Lovell Lumber Company. It is couched in these terms: "Received of Lovell Lumber Co., $2,000.00 in lumber for difference in full between VD-18 Int. Power units. The difference of the above amount has been settled in full to date." When Ball got the lumber he sold it for $3,974.16 and, after deducting commissions of $274.22 and haulage charges of $266.03 and retaining the residue of $2,000.00 of the purchase price of the engine, he refunded the remainder of $1,433.91 to Lovell Lumber Company.

The plaintiffs contend that the transaction which resulted in the simultaneous exchange of engines between Lovell Lumber Company and Ball and the delivery of lumber approximately two months afterward was a sale of the engine for part payment of the purchase price and upon credit for the residue of $2,000.00; that this residue, not having been satisfied by the simultaneous delivery of the lumber or by any valid transfer of the title to it at the time, was a debt of Lovell Lumber Company to Ball; and that its subsequent payment by the

deduction and the retention of $2,000.00 of the proceeds of the sale of the lumber by Ball on July 1, 1947, constituted a void and illegal preference in his favor to the prejudice of the plaintiffs within the provisions of Section 5, Article 1, Chapter 40, Code, 1931. On the contrary, the defendant Ball insists that the transaction was not a sale for part payment in cash and on credit as to the residue of the purchase price, but that it was an exchange by means of barter of the engine owned by Ball for the smaller engine and lumber of Lovell Lumber Company; and that the statute relating to illegal preferences among creditors of an insolvent debtor does not apply. These opposing contentions present the vital issue in the case.

Barter and exchange are regarded as nearly synonymous, 9 C. J. S., Barter, page 1551; 7 C. J. 931, and they are said to have about the same meaning. *Meyer v. Rousseau*, 48 Ark. 460, 2 S. W. 112. Barter is the exchange of one commodity or article of property for another; an exchange of properties; a contract by which the parties exchange goods. 9 C. J. S., Barter, page 1551. It is a contract by which parties exchange goods or commodities for other goods. Black's Law Dictionary, 3rd edition, 197. "It differs from a sale in that a barter is always goods for goods; a sale is of goods for money, or for money and goods. In a sale there is a fixed price; in a barter there is not." Bouvier's Law Dictionary, Third Edition, Vol. 1, page 328; Black's Law Dictionary, Third Edition, 197. "Where one commodity is exchanged for another of the same or a different kind, without agreement as to price, or reference to money payment, the transaction is not a sale, but a barter or exchange." *Gilliam v. State*, 47 Ark. 555, 2 S. W. 185. When parties exchange one article for another and the price or the value is not measured in terms of money, the transaction is a barter or an exchange; but if property is disposed of for a valuable consideration with or without the payment of money and the bargain is made, and the value is measured, in terms of money, the transaction

is a sale. *Duke v. State,* 146 Ala. 138, 41 So. 170; *Gunter v. Leckey,* 30 Ala. 591.

The parties agreed that each of the engines should have a definite price or value in consummating the deal but the quantity of the lumber to be transferred in payment of the difference between the agreed values of the engines was not fixed or determined. No specific type, number of pieces, or number of feet, of lumber to be used to make up the difference was designated or ascertained until the lumber was subsequently selected and taken by Ball who, independently of Lovell Lumber Company, exercised his individual choice in deciding what portion of the total supply he was willing to accept and when he should take it. Until he did so none of the parties knew what kind of lumber or how much of it he should get. No agreed quantity was set aside or earmarked or in any way identified as his portion of the entire assortment. If that had been provided for by the agreement the transaction would have been barter or exchange, a transfer in kind of one commodity or article of property for other commodities or articles of property without any agreement or understanding as to the price or the value, in terms of money, of the units of property included in the trade. That, however, was not done or intended by the parties to the transaction. Instead they agreed to determine the quantity, not by any stated number of pieces or linear feet, but solely by its value as measured in terms of money. By that method quantity depended on value; if the value increased, the quantity of lumber decreased, and if the value decreased, the quantity increased. According to the agreement the only possible way to arrive at the quantity of lumber necessary to equal and satisfy the difference between the values of the engines which had been exchanged, which amounted to $2,000.00, was to measure it in terms of money.

It is clear that the transaction here under consideration was not a full and complete exchange of property

by barter but was a sale on credit for the greater part of the purchase price of the larger engine. As a result, Lovell Lumber Company became indebted to Ball in the amount of $2,000.00 of the purchase price of the engine, and the debt thus contracted was not to be paid, and could not be paid, by Ball's acceptance of the lumber, until the lumber to be selected by him had been inspected and taken. He did not receive any part of the lumber until nearly two months after the agreement was made and after the company had become insolvent. Though no money was to be used in concluding the transaction, the quantity of the lumber required to pay the difference between the agreed price of each engine was to be determined, and was in fact determined, by means of its value in terms of money.

The designation of the transaction by the persons who negotiated it as a trade or an exchange of property, when considered in the light of the facts and the circumstances out of which it arose, is of no importance and does not of itself create an exchange. As already indicated, the legal effect of their agreement was not a simultaneous exchange of all the property involved but a sale of part of it, the engine owned by Ball, on a credit in an amount which exceeded two thirds of the price for which it was sold to Lovell Lumber Company. That title to the lumber was not intended by the parties to pass, and did not pass, to Ball by the agreement at the time it was made, or even on the day following when the engines were exchanged, is definitely established by the acts of Ball in charging and retaining haulage costs and commissions for transporting and selling it to the persons who purchased it from him when it was delivered to him on or about July 1, 1947, and in refunding to Lovell Lumber Company the amount of $1,433.91 which remained after he had paid its debt to him of $2,000.00 from the proceeds of the sale. If Ball had owned the lumber from the time of the agreement in April, 1947, as he now contends, there would have been no necessity for him to charge or collect any sum as haulage or commission and

no obligation upon him to refund to Lovell Lumber Company any part of the money which he received from the sale made by him. If he held title to the lumber under the agreement he was entitled to keep all the money which he obtained when he sold it on July 1, 1947. It should also be observed that the only witness who testified concerning the title to the lumber stated than when the agreement was made the title did not pass to Ball, and that this testimony on that point is not controverted or rebutted by any evidence in the case. There was no sale of the lumber and Ball did not acquire title to any part of it until the transfer which resulted when the lumber was delivered.

The first sentence of Section 5, Article 1, Chapter 40, Code, 1931, which has been in effect since 1895, declares in part that "Every transfer or charge made by an insolvent debtor attempting to prefer any creditor of such insolvent debtor, or to secure such a creditor or any surety or indorser for a debt to the exclusion or prejudice of any other creditor, shall be void as to such preference or security, but shall be taken to be for the benefit of all creditors of such debtor, and all the property so attempted to be transferred or charged shall be applied and paid pro rata upon all the debts owed by such debtor at the time such transfer or charge is made: * * *." After providing that the transfer or charge shall be valid as to a preference unless a creditor of the insolvent debtor shall institute a suit within one year after such transfer or charge is made to set it aside, or, if it is admitted to record within eight months after it is made, within four months after it is recorded, and providing the manner in which the suit shall be brought and conducted, the section continues: "Provided further, That nothing in this section shall be taken to prevent the making of a preference as security for the payment of purchase money or a bona fide loan of money or other bona fide debt contracted at the time such transfer or charge was made, or as security for one who at

the time of such transfer or charge becomes an indorser or surety for the payment of money then borrowed: * * *."

A debt, incurred in good faith and owed by an insolvent debtor, can not be preferred by a transfer of property to a creditor made by the debtor after the debt has been contracted. *Garner v. Martin,* 73 W. Va. 407, 80 S. E. 495; *Feely v. Bryan,* 55 W.Va. 586, 47 S. E. 307. This principle applies to a debt for purchase money which has been contracted before the transfer is made by an insolvent debtor in an attempt to pay the debt. *Garner v. Martin,* 73 W.Va. 407, 80 S. E. 495.

The defendant Ball cites and relies upon decisions of this Court to support his contention that title to the lumber subsequently delivered became vested in him when the agreement was made. The cases which he cites apply the well recognized and firmly established rule in this jurisdiction that delivery of possession is not indispensable to pass title to the purchaser of personal property under a contract of sale when the parties to the contract, by its terms and provisions, evince an intention to pass title before delivery and that in such circumstances their intention governs and operates to pass title before delivery. *Revelle v. McQuay,* 85 W.Va. 129, 101 S. E. 76; *Poling v. Huffman,* 84 W.Va. 199, 99 S. E. 445; *Moore v. Patchin,* 71 W.Va. 192, 76 S. E. 426. Examination of the cases cited by the defendant indicates clearly that the facts and the character of the agreement under consideration in each differ materially from those here present. For that reason the holdings in those cases do not apply to the case at bar.

The defendant Ball insists that he is entitled to an equitable lien upon the lumber which he obtained from Lovell Lumber Company as security for the amount of the difference between the values of the two engines. This position is entirely inconsistent with his principal contention that he obtained title to the lumber by barter

or exchange of the property. But aside from this, there is no evidence to support an equitable lien in his favor. Instead of claiming a lien which he could have obtained by the agreement, he sold his engine for the consideration of $2,700.00, part of which was paid by the delivery of the smaller engine valued at $700.00 and the residue of which consisted of credit extended by him to the amount of $2,000.00. Nothing appears from the agreement or the circumstances in which it was made to indicate that the parties intended to create a lien on the lumber or to treat it as security for the payment of the unpaid purchase money for the engine. No such arrangement, express or implied, existed as an inducement for the sale of the engine by Ball to Lovell Lumber Company which, before it bought the engine, was not indebted to him in any sum.

The facts in this case differ materially from the facts in the case of *Foster v. Frampton-Foster Lumber Co.*, 96 W.Va. 325, 123 S. E. 50, relied on by the defendant Ball, in which this Court recognized the existence of an equitable lien upon specific lumber of an insolvent debtor in favor of a creditor who shipped other lumber to the debtor in reliance upon a prior sale by the debtor to the creditor of the lumber upon which the lien was established. In that case the insolvent debtor, Frampton-Foster Lumber Company, owed the creditor, Keystone Manufacturing Company, a large sum of money for previously purchased lumber and, in order to induce the creditor to make additional shipments of lumber, sold it all the oak lumber of specified grades owned by the debtor at designated locations. This lumber was to be immediately inspected and graded by the creditor, but before that could be done and after the creditor had shipped additional lumber to the debtor "on the faith" of its purchase of the lumber, receivers were appointed in litigation to wind up the affairs of the insolvent debtor. In the opinion this Court, after discussing several cases, including the case of *Poling v. Huffman,* 84 W.Va. 199, 99 S. E. 445, which recognized and applied the rule that

title to personal property passes from a seller to a buyer before its delivery when it appears that the parties intended it to pass before delivery and that in that respect their intention should govern, uses this language: "Under these cases, and especially the last, it may be that the sale to the Keystone Company had become executed prior to the receiverships; at any rate, this company should have an equitable lien on the lumber in question for the value of lumber shipments by it to the Foster Company after the sale, which was made for the express purpose of securing to the Keystone Company payment for such shipments." The opinion also contains this statement: "The consideration for the lumber in controversy was not merely a past indebtedness from the Foster Company to the Keystone Company, but to the extent of the advances by subsequent shipments from the latter to the former it constituted a benefit to the insolvent's estate." The facts in the *Foster* case clearly distinguish it from the case at bar.

The transfer of the lumber by Lovell Lumber Company to Ball constituted a preference in his favor and is a transfer which the statute declares "shall be void as to such preference" and shall be taken to be for the benefit of all its creditors. For that reason the decree of the Circuit Court of Wyoming County is reversed and this cause is remanded for such further proceedings as may be necessary to satisfy the requirements of the statute.

*Reversed and remanded.*