MONROE STURGILL, *et al.*

*v.*

LOVELL LUMBER COMPANY, A CORPORATION, *et al.*

(No. 10358)

Submitted September 11, 1951. Decided October 30, 1951.

GIVEN, JUDGE, not participating.

*A. Garnett Thompson,* United States District Attorney, *Theron Lamar Caudle,* Assistant Attorney General, *Ellis N. Slack,* Special Assistant to Attorney General, *Frank K. Foster,* Special Assistant to Attorney General, for appellant.

*No appearance* for appellees.

LOVINS, JUDGE:

This suit was instituted by Monroe Sturgill and others, plaintiffs, against Lovell Lumber Company, a corporation, the Bank of Raleigh, a corporation, and Donald Hayhurst, defendants. The suit had for its purpose, among others, the appointment of a special receiver for the defendant, Lovell Lumber Company, such receiver to reduce all the property of the company to cash, to operate the company's sawmill and sell all lumber and logs produced from such operation for cash, and to wind up the affairs of the company.

During the progress of the suit an amended and supplemental bill was filed, alleging that the Lovell Lumber Company had illegally preferred James O. Ball, Sr. and James O. Ball, Jr., creditors. The trial court decided that issue adversely to plaintiffs, who prosecuted an appeal to this Court. Upon hearing the appeal this Court reversed the decree of the trial court and remanded the cause. For a statement of facts, and the conclusions of this Court, see *Sturgill v. Lovell Lumber Co.,* 132 W. Va. 172, 51 S. E. 2d 126.

The present appeal is not concerned with any phase of this cause except that part of the final decree of the Circuit Court of Wyoming County which adjudged priorities of the claims and debts against the Lovell Lumber Company.

The original plaintiffs filed notices of laborers' liens as authorized by Chapter 38, Article 2, Section 32, Code of West Virginia, various amounts having been claimed by them aggregating the sum of $5,292.93.

The cause was referred to a special commissioner in chancery. The United States of America filed its claims before such special commissioner, though not made a party defendant. Those claims were for withholding taxes, federal insurance contributions taxes, federal unemployment taxes, and other miscellaneous taxes, aggregating $3,216.75. The State of West Virgina, intervenor, filed a claim for corporation license taxes, unemployment compensation taxes, and business and occupation taxes, amounting to a total of $3,064.92.

Upon a hearing before the special commissioner in chancery, the claims of the original plaintiffs, the United States of America and the State of West Virginia, among others, were approved. The special commissioner reported that the debts due plaintiffs were first in priority; that the debts due the government of the United States were second in priority; that the debts due the State of West Virginia were third in priority; and that the debts due the general creditors could not be paid out of the money in the hands of the special receiver.

Upon the exceptions to the report of the special commissioner, filed by the Federal Government and the State of West Virginia, the Circuit Court decreed that certain of the claims of the United States of America, totaling $1,226.99, were first in priority; that the claims of Monroe Sturgill and the other laborers were second in priority; that the claims of the United States Government for federal insurance contributions taxes for the period ending June 30, 1947, and federal unemployment taxes to October, 1947, aggregating $1,989.76, were third in priority; that the claims of the State of West Virginia were fourth in priority; and that the general and unsecured claims allowed were fifth in priority, but could not be satisfied out of available assets.

The debts due the United States given third priority were so adjudicated because they had not been received by the Collector of Internal Revenue prior to the institution of the present suit, as were those given first priority.

The assets of the Lovell Lumber Company, after satisfying the debts due the United States decreed to be first in priority, were not sufficient to satisfy and discharge in full the debts due plaintiffs. The $1,909.70 in the hands of the special receiver was decreed to be distributed rateably among plaintiffs asserting laborers' liens.

The United States of America prosecutes this appeal from the decree of the circuit court, contending that the debts decreed to be third in priority should have also been decreed as first in priority under the authority of §3466, Revised Statutes of the United States (§191, Title 31 of the United States Code), in that (a) the United States of America had a claim or debt against an insolvent debtor, (b) that the liens of the plaintiff decreed to be second in point of priority did not amount to a perfected lien but were inchoate under Code, 38-2-31, and (c) that the provisions of §§ 3670, 3671, and 3672 of Title 26 of the United States Code, governing taxes due the government, have no application to the question of priority.

The sole question for decision is: Are the two debts due the United States of America, decreed as third in priority, entitled to priority over the laborers' liens asserted by the plaintiffs? A determination of this question rests upon pertinent federal and state statutes and the application thereof by the courts.

The Federal Government relies on a statute reading in part as follows: "Whenever any person indebted to the United States is insolvent, * * * the debts due to the United States shall be first satisfied; * * *" §3466, id.

The plaintiffs in their original bill alleged that the Lovell Lumber Company was largely indebted and did not have sufficient property, real and personal, out of which to pay its debts and "is otherwise insolvent." Upon that bill of complaint the trial court appointed a special receiver. The special commissioner in chancery, to whom this cause was referred, reported that all the assets of the company were not sufficient to pay all the claims allowed. Ordinarily, a person is insolvent when

all of his property is not sufficient to pay all of his debts. *Wolf* v. *McGugin,* 37 W. Va. 552, 16 S. E. 797; *Carr* v. *Summerfield,* 47 W. Va. 155, 34 S. E. 804; see *Ream's Drug Store* v. *Bank,* 115 W. Va. 66, 70, 174 S. E. 788. The allegations of the plaintiffs' original bill, the finding of the special commissioner in chancery, and the subsequent confirmation of the commissioner's report sufficiently established the existence of insolvency of the Lovell Lumber Company on July 1, 1947. Hence §3466, *id.,* is applicable to the indebtedness of the Lovell Lumber Company to the United States of America.

Priority of debts due the United States does not rest on any common law principle, but it is founded on statute based on the common law right accorded the Sovereign of England as a royal prerogative. *United States* v. *State Bank of North Carolina,* 6 Peters 28, 8 L. ed. 308; see *Spokane County* v. *United States,* 279 U. S. 80, 49 S. Ct. 321, 73 L. ed. 621; *New York* v. *Maclay,* 288 U. S. 290, 53 S. Ct. 323, 77 L. ed. 754. As contrasted with the statutory right of priority possessed by the United States, the power of states to create priorities arises from the common law. The principle of preference arising out of sovereignty has been adopted in this jurisdiction. *Woodyard* v. *Sayre,* 90 W. Va. 295, 110 S. E. 689; see *Fidelity and Guar. Co.* v. *Trust Co.,* 95 W. Va. 458, 121 S. E. 430; *Trust Co.* v. *Bank,* 107 W. Va. 679, 681, 150 S. E. 221. But that doctrine does not extend to counties. *County Court* v. *Mathews,* 99 W. Va. 483, 129 S. E. 399.

The insolvency of the Lovell Lumber Company being established, we are of the opinion that §3466, *id.,* clearly applies, but that it operates only to give priority and in no wise creates any lien in favor of the United States of America. *Beaston* v. *Farmers' Bank of Delaware,* 12 Peters 102, 9 L. ed. 1017.

It would seem that the foregoing discussion would resolve the question, but the view was adopted by the trial court that §§ 3670, 3671, and 3672 of Title 26 of the United States Code, apply and bar the priority of the United

States of America in the absence of a showing that an assessment list had been received by the Collector of Internal Revenue prior to the institution of the present suit. §3670, *id.*, provides as follows: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." §3671, *id.*, reads as follows: "Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time." §3672, *id.*, reads in part as follows: "Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector— (1) In accordance with the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law provided for the filing of such notice; \* \* \*".

It is provided under the law of this state that such liens shall be recorded in the office of the clerk of the county court. Code, 38-2-33, as amended.

It will be noted that §3672, *id.*, restricts the protection given therein to a mortgagee, pledgee, purchaser, or judgment creditor in the event the lien in favor of the United States is not recorded.

§3466, *id.*, was enacted in 1797 while the statute out of which §§ 3670, 3671, and 3672, Title 26, grew was enacted in 1866, and a cursory consideration would seem to indicate that the enactment in 1866 superseded or modified the prior enactment by Congress. But it has not been so held. The later sections deal with liens and the procedure to preserve them as against mortgagees, pledgees, purchasers, and judgment creditors. §3466, *id.*, declares

a statutory right of priority to exist in the United States of America in certain instances, as here, where an insolvent debtor owes the United States a debt. The priority so created applies to debts whether they are payable before or after the insolvency. *United States* v. *State Bank of North Carolina, supra.* The debts here denied priority by the trial court were owing to the United States as a matter of law.

In applying §3466, *id.,* the United States was given priority over the lien of a judgment creditor, *Thelusson, et al.* v. *Smith,* 2 Wheaton 396; over a county's tax assessment on the funds of an insolvent taxpayer made after the federal assessment, and over county taxes assessed on personal property of a taxpayer before the appointment of a receiver, but which assessment was not supported by a specific lien, *Spokane County* v. *United States, supra;* over a claim of the United States founded upon estreated bail bonds as against the claim of the state and its citizens to the assets of a surety company on deposit with the state treasurer, *United States* v. *Knott,* 298 U.S. 544, 56 S. Ct. 902, 80 L. ed. 132; over the claim of the State of New York for franchise and gross earnings tax, *New York* v. *Maclay, supra;* over the claim of a state for motor fuel taxes owing the state by an insolvent motor fuel distributor, *United States* v. *State of Texas,* 314 U. S. 480, 62 S. Ct. 350, 86 L. ed. 356; over a claim made by a landlord for rent under the state law and over taxes due a municipality, both of which were given a lien under the state law, *United States* v. *Waddill Co.,* 323 U. S. 353, 65 S. Ct. 304, 89 L. ed. 294. See *Illinois* v. *Campbell,* 329 U. S. 362, 67 S. Ct. 340, 91 L. ed. 348; *Massachusetts* v. *United States,* 333 U. S. 611, 68 S. Ct. 747, 92 L. ed. 968.

In many of the foregoing instances where the United States was given priority under §3466, *id.,* there was a question of whether the lien asserted in opposition to priority of the United States was specific. The Supreme Court of the United States has not decided the question of whether a specific lien would give way to the priority declared by the federal statute, but it has held in many

instances that a lien lacking specificness would not be accorded priority. See *New York* v. *Maclay, supra; United States* v. *Waddill Co., supra; Illinois* v. *Campbell, supra.* In many instances the liens asserted have been treated "merely as a *caveat* of a more perfect lien to come." *New York* v. *Maclay, supra.*

Are the liens asserted by the plaintiffs specific liens? Code, 38-2-31, as amended by Chapter 77, Acts of the Legislature, Regular Session, 1939, provides that, "Every workman, laborer or other person who shall do or perform any work or labor, for an incorporated company doing business in this State, by virtue of a contract either directly with such incorporated company or with its general contractor, or with any sub-contractor, shall have a lien for the value of such work or labor upon all real estate and personal property of such company; * * *." Other provisions are to the effect that such lien to the value of one month's work or labor shall have priority over a lien created by deed or otherwise. The lien created by Code, 38-2-31, as amended, is discharged unless a notice thereof is filed with the clerk of the county court of the county in which such work or labor was performed. Code, 38-2-32. In order that such lien may be preserved, a suit in chancery to enforce the same must be commenced within six months after the claimant shall have filed his notice in the county clerk's office. Code, 38-2-34.

It is thus seen that the liens here asserted by the plaintiffs attached to all of the property of the insolvent corporation and requires for their preservation and enforcement recordation in the county clerk's office, and ascertainment and adjudication thereof in a court of equity.

"The long-established rule requires that the lien must be definite, and not merely ascertainable in the future by taking further steps, in at least three respects as of the crucial time. These are: (1) the identity of the lienor, * * *; (2) the amount of the lien, * * *; and (3) the property to which it attaches, * * *. It is not enough that the lienor has power to bring these elements, or any of them,

down from broad generality to the earth of specific identity." *Illinois* v. *Campbell, supra.*

Measured by the foregoing criteria, we hold that the liens asserted by plaintiffs were not specific enough on July 1, 1947, to take priority over the indebtedness due the United States.

We are confronted with some expressions in the opinion of this Court in the case of *Coal Co.* v. *Fuel Co.,* 130 W. Va. 720, 45 S. E. 2d 750. An examination of the syllabus and opinion in that case discloses that there was no question of priority within the meaning of §3466, *id.,* since the debtor in that case, a corporation, not clearly shown to be insolvent, had made a voluntary assignment. There was no attachment of an absconding, concealed or absent debtor, nor had an act of bankruptcy been committed within the meaning of the Federal Bankruptcy Act. This Court was there concerned with the priority of a tax lien as against a purchaser within the meaning of Title 26, U. S. Int. Rev. Code. It is true that there are statements in the opinion of *Coal Co.* v. *Fuel Co., supra,* at page 735, et seq., to the effect that the United States, in asserting its claims, had not shown the application of the provisions of that section. Clearly the expressions with reference to the applicability of Revised Statutes, §3466, are dicta.

We are of opinion that since no question has been presented relative to liens for taxes or priorities as between the United States and a mortgagee, pledgee, purchaser, or judgment creditor, all the claims of the United States presented in this cause were entitled to priority over the laborers' liens asserted by the plaintiffs, and accordingly we reverse the decree of the Circuit Court of Wyoming County in that particular. No question relative to the other parts of the decree of the trial court is raised on this appeal, and accordingly we affirm those parts of the decree not questioned on this appeal.

*Affirmed in part;*
*reversed in part;*
*and remanded.*