## In re Estate of Lydia Lane.
### Mabel Lane, administratrix-appellee; United States of America, appellant, v. State of Iowa, appellee.

### No. 48313.

(Reported in 59 N.W.2d 593)

JULY 17, 1953.

Warren E. Burger, Assistant Attorney General, Roy L. Stephenson, United States Attorney, Cloid I. Level, Assistant United States Attorney, and Paul A. Sweeney, George F. Foley and Morton Hollander, attorneys, Department of Justice, Washington, D. C., for appellant.

M. J. Walsh, of Ames, for Mabel Lane, administratrix, appellee.

Herman Walter, Special Assistant Attorney General, for State of Iowa, appellee.

OLIVER, J.—Decedent died February 8, 1951. The claim of United States of America for $952.70, with interest, was made by the Federal Housing Commissioner. It recites the consideration for the debt was a loan made by a financial institution insured under the National Housing Act, represented by a note made by decedent in 1946 and acquired by United States in 1947,

the obligation now being in the form of a judgment against decedent, assigned to United States in 1948.

The claim of State of Iowa was made by State Board of Social Welfare and is based upon chapter 249, Code of Iowa, 1950, entitled Old-Age Assistance. Part of the claim is for old-age assistance in the sum of $291 furnished decedent's husband by the State from February 1, 1936 to October 1, 1937. A copy of the order for assistance was properly indexed and recorded in the office of the County Recorder of Story County, March 3, 1937. The other part is for old-age assistance in the sum of $5780.10, furnished decedent from March 1, 1937 to February 1, 1951. A copy of this order was recorded and indexed in the office of the County Recorder April 30, 1937. Code section 249.20 provides, "* * * the assistance furnished under this chapter shall be and constitute a lien on any real estate owned either by the husband or wife * * *. * * * and such recording and indexing shall constitute notice of such lien."

It was stipulated the claims of both the State and United States, as filed, were proper and should be allowed. The only property in decedent's estate was real estate which the administratrix sold for the purpose of paying debts. The parties stipulated the sale was proper and consented to an order of court that the net proceeds be delivered to and held by the clerk pending determination of the priority of their claims. The claim of the State to priority in such proceeds is based upon its lien which was recorded a number of years prior to the incurring by decedent of the obligation subsequently acquired by United States.

The trial court established the claim of the State in the proceeds of the sale of the real estate as prior and superior to the claim of the United States. Hence, this appeal by United States.

I. The United States relies upon section 3466 of the United States Revised Statutes (31 U. S. C. A., section 191) which provides in part: "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied * * *."

That the claim acquired by the Federal Housing Administration under the National Housing Act is a debt due from deceased to the United States, within the meaning of section 3466 R. S., is not seriously disputed by the State. United States v. Emory, 314 U. S. 423, 426, 430, 62 S. Ct. 317, 86 L. Ed. 315; United States v. Summerlin, 310 U. S. 414, 416, 60 S. Ct. 1019, 84 L. Ed. 1283.

Nor does the United States question the validity of the old-age assistance lien against the real estate. However, without conceding that a specific and perfected lien would overcome the federal priority provided by section 3466 R. S., it contends the lien of the State is neither specific nor perfected. Of course, the meaning of section 3466 is for the Supreme Court of the United States to decide. That court has frequently held the section should be liberally construed for the protection of the public revenues. It has stated that the words of the section are broad and sweeping and on their face admit of no exception to the priority of claims of the United States. United States v. Waddill, Holland & Flinn, 323 U. S. 353, 355, 65 S. Ct. 304, 89 L. Ed. 294; Illinois ex rel. Gordon v. United States, 328 U. S. 8, 12, 66 S. Ct. 841, 90 L. Ed. 1049; Massachusetts v. United States, 333 U. S. 611, 634, 68 S. Ct. 747, 92 L. Ed. 968.

Accordingly it has viewed strictly the claims of others than the United States and has repeatedly denied them priority on the ground their liens were not perfected and specific liens which were impliedly excepted from section 3466 R. S. In these cases the court has been careful to point out that it has never actually held there is such an exception and that it finds it unnecessary to meet that issue because the liens asserted do not raise the question.

In Illinois ex rel. Gordon v. Campbell, 329 U. S. 362, 374, 375, 376, 67 S. Ct. 340, 347, 91 L. Ed. 348, 357, the state had filed notice of lien for state unemployment compensation taxes upon all the employer's personal property used in the business, and a receiver had been appointed at the request of the state. The court stated:

"It has never been sufficient to show merely a general lien, effective to protect the lienor against others than the Government, but contingently on taking subsequent steps either for

giving public notice of the lien or for enforcing it. [Citing authorities.] The federal priority is not destroyed by state recording acts any more than by state statutes creating or otherwise affecting liens, if the lien as recorded or otherwise executed does not have the required degree of specificity and perfection. Under the decisions the test is not, and cannot be, simply whether by his taking further steps the lienor's rights will be enforced against others than the Government.

"The long-established rule requires that the lien must be definite, and not merely ascertainable in the future by taking further steps, in at least three respects as of the crucial time. These are: (1) the identity of the lienor * * *; (2) the amount of the lien [citing authorities]; and (3) the property to which it attaches [citing authorities]. It is not enough that the lienor has power to bring these elements, or any of them, down from broad generality to the earth of specific identity. * * *

"To permit the recording of the notices or the receiver's appointment, or both, in circumstances like these, to overcome the Government's priority would be in substance to overrule the numerous decisions cited in which liens no less 'specific and perfected' have been held impotent for that purpose. It would open the door, too, we think, to substantial nullification of the Government's priority. For then this could be accomplished simply by recorded notices of lien, disclosing claims to property not segregated from the debtor's general estate; designated only by general words of classification, including after-acquired property as here; and ascertainable definitively only by further procedures. Congress alone should make such a change, if it should be made at all."

Some other decisions in accord with these pronouncements are: United States v. Waddill, Holland & Flinn, 323 U. S. 353, 357, 358, 65 S. Ct. 304, 89 L. Ed. 294; New York v. Maclay, 288 U. S. 290, 294, 53 S. Ct. 323, 77 L. Ed. 754; Spokane County v. United States, 279 U. S. 80, 49 S. Ct. 321, 73 L. Ed. 621; United States v. Texas, 314 U. S. 480, 62 S. Ct. 350, 86 L. Ed. 356.

United States v. Gilbert Associates, Inc., 345 U. S. 361, 366, 73 S. Ct. 701, 704, 97 L. Ed. 272, involved tax liens of a town

and of the United States. The court stated: "In claims of this type, 'specificity' requires that the lien be attached to certain property by reducing it to possession, on the theory that the United States has no claim against property no longer in the possession of the debtor. Thelusson v. Smith, 2 Wheat. 396 [4 L. Ed. 271]. Until such possession, it remains a general lien. * * * The taxpayer had not been divested by the Town of either title or possession. The Town, therefore, had only a general, unperfected lien."

In re Brumer, 252 Wis. 425, 31 N.W.2d 599, 34 N.W.2d 325, and Sturgill v. Lovell Lumber Co., 132 W. Va. 172, 51 S.E.2d 126, 67 S.E.2d 321, follow Illinois ex rel. Gordon v. Campbell, supra.

In the case at bar the property subject to the State's liens was not specifically designated. These liens covered any real estate owned by decedent when the orders for assistance were made or which was thereafter acquired by her. See Thomas v. State of Iowa, 241 Iowa 1072, 44 N.W.2d 410. The death of decedent was the "critical" or "crucial" date, at which the rights of the parties were fixed. At that time the State had neither title to nor possession of the real estate. It may be observed the liens of the State could not have been enforced until after her death. Code section 249.19; In re Estate of Ragan, 237 Iowa 619, 23 N.W.2d 521.

The State contends these statutory liens are mortgages created by operation of law. We disagree. Although the term "mortgage" is included in the generic term "lien", statutory liens are liens created by statute and mortgages are liens created by contract. Assuming the legislature might have given these old-age-assistance liens another name it did not do so. Nor would a different name change them from general liens to specific liens. They covered no specific property but were liens upon "any real estate owned" by decedent. Counsel for the State say the property encumbered by such a lien is easily ascertainable because Code section 249.9 makes a single person ineligible for old-age assistance if the assessed value of his real property, less recorded liens, exceeds $2000. However, the probability that a person was the owner of only a small amount of

property would not transform a general lien upon all his real estate into a specific lien. It is our conclusion the liens of the State were neither specific nor perfected, within the definitions prescribed by the Supreme Court of the United States. Hence, they would not be excepted from section 3466 R. S.

II. The State contends that to allow the United States priority would be inconsistent with the purposes of Title I of the original Social Security Act. We hold this contention is not well founded. The argument recites in substance: The Federal Social Security Act was adopted in 1935; Title I is entitled "Grants to States for Old-Age Assistance"; the Act required that the states pay the United States half of the net amounts of old-age benefits recovered from the estates of recipients; in 1939 Congress terminated this requirement, thus indicating the United States intended the states to retain all amounts thus recovered; Title I of the Act was a grant in aid to states complying with the Act; to grant priority to the United States under section 3466 R. S. would frustrate the financial aid which Title I sought to provide.

The argument at this point is largely based upon the premise that the 1939 amendment freed the State from any obligation to share its recoveries with the United States. That premise is false. The amended Act provides that the United States shall deduct from grants paid a State "a sum equivalent to the pro rata share to which the United States is equitably entitled * * * of the net amount recovered during any prior quarter by the State * * * with respect to old-age assistance furnished under the State plan." 53 Stat. at L. 1361, 42 U. S. C. A., section 303(b), (2)(B). In other words, instead of requiring the State to pay the United States its share of the recovery the United States merely deducts the amount from grants subsequently made by it to the State.

The State relies upon United States v. Guaranty Trust Co., 280 U. S. 478, 50 S. Ct. 212, 74 L. Ed. 556, which held section 3466 R. S. was inapplicable to the collection of loans made by the Government under the Transportation Act of 1920, to carriers, to rehabilitate and maintain their credit status. The reasoning of the decision was that to give priority to these loans

under such circumstances would defeat the purpose of the legislation by impairing the credit of the railroads, since others would not freely extend credit if their claims were to be sub-ordinate to those of the United States. Another reason was the Act contained other provisions for securing the loans. The situation in the case at bar is not comparable to that in the cited case. Here the claim of the United States has no connection with the claim of the State or the question concerning the division of the amount recovered by the State. Nor will the allowance of the federal claim frustrate the financial aid which the Act provides. In fact the payment to the State from the Government for old-age assistance will be increased by about half of the net amount the State would have recovered.

United States Department of Agriculture v. Remund, 330 U. S. 539, 544, 545, 67 S. Ct. 891, 894, 91 L. Ed. 1082, 1088, states:

"We conclude that there is no irreconcilable conflict between giving emergency loans to distressed farmers and giving priority to the collection of these loans pursuant to §3466. Such priority could in no way impair the aid which the farmers sought through these loans; nor could it embarrass the farmers in their daily operations. Moreover, these loans called for a first lien on crops growing or to be grown, or on livestock. The conditions prevailing in 1934 made this type of security uncertain and there is no indication that Congress meant such a lien to be the sole security to which the Government could look for repayment.

"We reiterate what was said in United States v. Emory, 314 U. S. 423, 433 [62 S. Ct. 317, 322, 86 L. Ed. 315]: 'Only the plainest inconsistency would warrant our finding an implied exception to the operation of so clear a command as that of §3466.' In this case, as in that, we think such inconsistency is wholly wanting. United States v. Guaranty Trust Co., supra, is therefore inapposite."

Illinois ex rel. Gordon v. United States, 328 U. S. 8, 10, 66 S. Ct. 841, 842, 90 L. Ed. 1049, 1052, held federal unemployment compensation taxes and federal insurance contribution taxes, both under the Social Security Act, were prior under R. S. 3466 to state unemployment compensation taxes. The court overruled

the contention that enforcement of priorities over state unemployment compensation tax claims would "tend to frustrate the manifest purpose of Congress to foster, in the national interest, sound financial and stable state unemployment compensation systems."

III. Another contention of the State is that the real estate is exempt from judicial sale for the claim of the United States. It is a sufficient answer that the record does not show the property is exempt.

The order of the district court is reversed and the case is remanded with instructions to allow the claim of the United States priority over the old-age-assistance lien of the State.— Reversed and remanded.

All JUSTICES concur except LARSON, J., who takes no part.